**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Buddy Joe BARNARD et al., Defendants-Appellants.**

**Nos. 72–3168, 73–1201, 73–1202 and 73–1203.**

United States Court of Appeals, Ninth Circuit.

Dec. 10, 1973.

Rehearing Denied Jan. 29, 1974.

Certiorari Denied April 22, 1974.
See 94 S.Ct. 1976.

---

Philip A. DeMassa, Thomas J. Ryan (argued), DeAnne D. Fisher (argued), James P. Hagerstrom (argued), San Diego, Cal., for defendants-appellants.

James Brannigan, Asst. U. S. Atty. (argued), Harry D. Steward, U. S. Atty., James W. Brannigan, Jr., Atty. (argued), Dept. of Justice, San Diego, Cal., for plaintiff-appellee.

Before DUNIWAY and CHOY, Circuit Judges, and MURRAY,* District Judge.

OPINION

DUNIWAY, Circuit Judge:

In December of 1972, the four appealing defendants, Buddy Joe and Jerry Robert Barnard, Low, and Remley, were convicted on five counts: conspiracy to import marijuana in violation of 21 U. S.C. §§ 952, 960 and 963 (one count); attempted importation and importation of marijuana in violation of 21 U.S.C. §§ 952, 960 and 963 (two counts); and possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a) (two counts). The indictment was returned and trial was held in the Southern District of California. We affirm.

Appellants do not claim that the evidence is not sufficient to sustain the convictions. We therefore state, in connection with their various contentions, only so much of the facts as are necessary to elucidate their contentions.

### 1. *Venue*

Appellants argue that, as to all counts, venue was improperly laid in the Southern District of California.

#### a. *The Conspiracy Count*

The defendants conspired among themselves and with others to smuggle marijuana by airplane into California from Mexico. Two successful plane trips were made from Mexico to Palmdale, in the Central District of California, before the scheme was uncovered and stopped by law enforcement officials. On the second trip, the plane stopped in Banning, in the Central District of California, for refueling. The first flight was made nonstop from Mexico to Palmdale.

Six overt acts were alleged as part of the conspiracy. One of them, which was

* The Honorable William D. Murray, Senior United States District Judge, District of Montana, sitting by designation.

used to establish venue in the Southern District, was that on one of the trips defendant Low (and the pilot, Mason), while en route to Mexico, landed at the Borrego Valley Airport, Borrego Springs, in the Southern District of California, for refueling and to make a telephone call concerning whether all was in order at their pickup point in Mexico. The gist of defendants' argument is that this nexus with the District was too tenuous to justify venue there.

Article III, Section 3, of the Constitution and the Sixth Amendment fix venue "in the State" and "district wherein the crime shall have been committed." *See* Johnston v. United States, 1956, 351 U. S. 215, 224, 76 S.Ct. 739, 744, 100 L.Ed. 1097. We recognize that "Questions of venue in criminal cases . . . are not merely matters of formal legal procedure. They raise deep issues of public policy in the light of which legislation must be construed." United States v. Johnson, 1944, 323 U.S. 273, 276, 65 S. Ct. 249, 251, 89 L.Ed. 236.

Nevertheless, although defendants would have us hold otherwise, the law is that an overt act committed in the course of a conspiracy which occurs in a district gives rise to jurisdiction to prosecute the conspirators in that district. Hyde v. United States, 1912, 225 U.S. 347, 367, 32 S.Ct. 793, 56 L.Ed. 1114; Brown v. Elliott, 1912, 225 U.S. 392, 400, 32 S.Ct. 812, 56 L.Ed. 1136; Grigg v. Bolton, 9 Cir., 1931, 53 F.2d 158, 159–160; Dedmore v. United States, 9 Cir., 1963, 332 F.2d 938, 946–947; United States v. Phillips, 8 Cir., 1970, 433 F.2d 1364, 1368. The only remaining question raised by defendants as to venue on the conspiracy count is whether the refueling of the airplane in Borrego Springs and the telephone calls placed there are of sufficient import to constitute an overt act. It is clear that they are. *See* United States v. Trenary, 9 Cir., 1973, 473 F.2d 680, 682.

b. *The Substantive Counts*

Defendants were charged with two counts each of attempted importation and importation of marijuana in violation of 21 U.S.C. §§ 952, 960 and 963, and possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a). The basis for venue in the Southern District as to these counts is the flights of defendants' airplane over that district as it progressed from Mexico to its landing in the Central District of California.

Surprisingly, in their brief, appellants do not differentiate between the substantive counts and the conspiracy count as to venue, nor do they stress that more serious venue problems may inhere in the former. The government does make this distinction, but (not surprisingly) gives it short shrift. We consider the issue sufficiently raised to merit our treating it on appeal. The question we face is whether airplane overflight of a district may properly give rise to venue in that district with respect to the crimes charged here. Apparently this question is one of first impression.

Certain crimes may be considered as "continuing" crimes. Typically, a "continuing" crime involves movement, or conduct occurring in more than one place.[1] Kidnapping is an example. Venue may lie in any district in which the continuing conduct has occurred. In 1948, Congress passed a general multiple venue statute, codified as 18 U.S.C. § 3237, which provides in pertinent part:

"(a) Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.

1. To be distinguished from "continuing crimes" are crimes begun in one district and completed in another. For a thorough treatment of the multiple venue question generally, *see* Abrams, Conspiracy and Multi-Venue in Federal Criminal Prosecutions: The Crime Committed Formula, 9 U.C.L.A. L.Rev. 751 (1962).

Any offense involving use of the mails, or transportation in interstate or foreign commerce, is a continuing offense and, except as otherwise expressly provided by enactment of Congress, may be inquired of and prosecuted in any district from, through, or into which such commerce or mail matter moves." [2]

Any crime which the court determines to have continued in more than one district is subject to multiple venue, under the provisions of the statute. The Supreme Court long ago gave its imprimatur of approval to multiple venue for continuing crimes. Armour Packing Co. v. United States, 1908, 209 U.S. 56, 71–77, 28 S.Ct. 428, 52 L.Ed. 681; United States v. Johnson, *supra.*

The decisions do not limit the statute to crimes which necessarily involve movement. Crimes which involve a continuing condition, or status, may also be subject to multiple venue. Thus in United States v. Cores, 1958, 356 U.S. 405, 78 S.Ct. 875, 2 L.Ed.2d 873, the Supreme Court determined that an alien who "remained" in the United States after his permit had expired was guilty of a continuing crime, and could be brought to trial either in the district where he was found or in the district where he was when the permit expired. We think it significant that in *Cores* the Court said: "Given the element of willfulness, we believe an alien 'remains,' . . . until he physically leaves the United States. . . . [V]enue . . . lies in any district where the crewman wilfully remains after the permit expires." 356 U.S. at 409, 78 S.Ct. at 878. And in *Armour Packing Co., supra,* which dealt with shipments in interstate commerce, the Court said (209 U.S. at 77, 28 S.Ct. at 433): "To say that this construction may work serious hardship in permitting prosecutions in places distant from the home and remote

from the vicinage of the accused is to state an objection to the policy of the law, not to the power of Congress to pass it. Hyde v. Shine, 199 U.S. 62, 78, [25 S.Ct. 760, 50 L.Ed. 90.] But this is a large country, and the offense under consideration is one which may be constantly committed through its length and breadth. This situation arises from modern facilities for transportation and intercommunication in interstate transportation, and considerations of convenience and hardship, while they may appeal to the legislative branch of the government, will not prevent Congress from exercising its constitutional power in the management and control of interstate commerce."

Within this framework we focus on the two crimes charged here.

(i) *Importation.* As it relates to the second paragraph of 18 U.S.C. § 3237(a), the crime of importation of marijuana obviously involves both "transportation" and "foreign commerce." Thus by statute Congress has defined this crime as a "continuing" one. Congress has also explicitly provided that prosecution may be had in "any district from, through . . . which such commerce . . . moves." We have no doubt that, if the defendants had imported marijuana from Mexico on foot or on horseback or by wagon or a bicycle or car, and had taken it across the Southern District and into the Central District, venue would lie in either district. The only difference here is that they did it by flying across the Southern District. But the navigable airspace above that district is a part of the district. What the Court said in *Armour Packing Co., supra,* is applicable here. See also United States v. Jackson, 10 Cir., 1973, 482 F.2d 1167 at 1178.

(ii) *Possession.* Under the authority of United States v. Cores, *supra,* we have no difficulty in treating the crime of possession of marijuana with intent

---

2. The second paragraph of section (a) was passed in response to the Supreme Court's decision in United States v. Johnson, 1944, 323 U.S. 273, 65 S.Ct. 249. *Johnson* involved "using" the mails for the purpose of

"sending" a denture into a state in violation of the Federal Denture Act. The Court ruled that venue did not lie in the district of receipt, relying, inter alia, on the absence of any specific venue provision in the act.

to distribute, 21 U.S.C. § 841(a), as a continuing one. When the plane was loaded with marijuana in Mexico and began its flight, it and its contents were in the actual or constructive possession of defendants, or at least a jury could so find. The quantity of marijuana was such as to give rise to an inference that all of the defendants intended to distribute it. A jury could find that the possession and the intent existed when the plane crossed the border into the Southern District of California, and continued while the plane crossed that district and flew into the Central District, where it landed. Thus, venue could be laid in either district.

### 2. The Witness Dillon

Dillon was a co-defendant in the case. He testified for the government. After the trial was over, he pled guilty to count 3 and was given five years' probation. The other two counts were dismissed.

### a. Expert Testimony as to Dillon's Competency to Testify

■■■ On November 5, 1972, two days before the beginning of trial, it came to the attention of the defendants that Dillon had had psychiatric problems which had led to his discharge from the United States Army in 1960. The defendants asked the court to order a psychiatric examination of Dillon to determine whether he would be a competent witness. The court conducted its own voir dire examination of Dillon outside the presence of the jury, and, satisfied that Dillon would be a competent witness, denied the defendants' request.

When a question is raised as to the competency of a witness to testify, it is for the judge to decide. He may call to his aid the testimony of expert witnesses. This was done in District of Columbia v. Armes, 1882, 107 U.S. 519, 2 S.Ct. 840, 27 L.Ed. 618. See also United States v. Hiss, S.D.N.Y., 1950, 88 F. Supp. 552. Neither these cases, nor any others that have come to our attention, require that he call or hear experts on

the question. Necessarily, the judge must have, and does have, considerable discretion in the matter. It has been held not to be an abuse of discretion to refuse to hear such evidence under circumstances quite similar to those before us: United States v. Skillman, 8 Cir., 1971, 442 F.2d 542, 560; United States v. Lee Wan Nam, 2 Cir., 1960, 274 F.2d 863, 864–865. We find no abuse of discretion here.

### b. Expert Testimony as to Dillon's Credibility

■■■ Defendants offered the testimony of a psychiatrist and a psychologist, who were called to testify as to their opinions of Dillon's competency and reliability as a witness. Each had read over the record of Dillon's Army psychiatric evaluation and his grand jury testimony, and had observed Dillon for part of the time when he was testifying in court. On the basis of this familiarity with Dillon, each had formed the opinion that Dillon was a sociopath who would lie when it was to his advantage to do so. The offer was rejected.

As we have seen, competency is for the judge, not the jury. Credibility, however, is for the jury—the jury is the lie detector in the courtroom. Judges frequently instruct juries about factors that the jury may or should consider in weighing the veracity of a witness. In this respect it can be said that judges assume that they have certain expertise in the matter, and that juries have less of that expertise than judges. It is now suggested that psychiatrists and psychologists have more of this expertise than either judges or juries, and that their opinions can be of value to both judges and juries in determining the veracity of witnesses. Perhaps. The effect of receiving such testimony, however, may be two-fold: first, it may cause juries to surrender their own common sense in weighing testimony; second, it may produce a trial within a trial on what is a collateral but still an important matter. For these reasons we, like other courts that have considered

the matter, are unwilling to say that when such testimony is offered, the judge must admit it. *See* United States v. Rosenberg, S.D.N.Y., 1952, 108 F. Supp. 798, 806, aff'd, 2 Cir., 1952, 200 F.2d 666; United States v. Daileda, M. D.Pa., 1964, 229 F.Supp. 148, 153–154.

The admissibility of the proffered testimony was for the judge, and in deciding whether to admit expert testimony, "the trial judge has broad discretion . . . and his action is to be sustained unless manifestly erroneous." Salem v. United States Lines, 1962, 370 U.S. 31, 35, 82 S.Ct. 1119, 1122, 8 L.Ed. 2d 313. Here we find no abuse of discretion. The experts' knowledge about Dillon was limited, to say the least. Dillon's credibility was otherwise suspect, as a co-defendant testifying for the government, and as having perjured himself before the grand jury. We have grave doubt that the expert testimony would have helped the jury. Under the Constitution, Article III, § 3, trial of criminal cases in Federal courts is by jury, not by experts. We think that the testimony of the type offered in this case should be received only in unusual cases, such as United States v. Hiss, *supra*. And by referring to that case we are not saying that it would have been error to exclude the testimony there offered and received.

c. *Exclusion of a Medical Record as Related to Dillon's Credibility*

■ Defendants argue that Dillon's Army psychiatric evaluation should have been admitted into evidence, so that the jury might consider it in assessing Dillon's credibility. After conducting its voir dire of Dillon, the court excluded the report on the grounds that it was of dubious probative value because it reflected proceedings occurring some twelve years before trial, and that the report dealt with a personality disorder which was not severe enough to bear upon the question of competency. The court felt that any probative value the report might have would be offset by its prejudicial effect on the jury.

The court did not abuse its discretion. *See*, III A Wigmore, Evidence, § 932 (Chadbourn rev. 1970); Rule 403, Proposed Federal Rules of Evidence.

3. *The Telephone Toll Records*

■ Defendants argue that the court erred in admitting certain telephone toll records, on the ground that the records were disclosed to the government in violation of 47 U.S.C. § 605, in that customs agents inspected them before a subpoena had been issued for their production. It appears that one, and perhaps two sets of records were inspected by customs agents before a subpoena was issued.

We need do no more than state that we agree with the decisions of the second and seventh circuits that garden variety telephone toll records such as these do not fall within the scope of 47 U.S.C. § 605. In United States v. Covello, 2 Cir., 1969, 410 F.2d 536, Judge Waterman wrote:

"[T]he keeping of toll records is a necessary part of the ordinary course of the telephone company's business and is necessary in order that the company may substantiate its charges to its customers. Toll records are kept for all telephone subscribers and are not kept just for subscribers being investigated by officers of the law, or ones suspected of criminal proclivities. The subscriber is fully aware that such records will be made, United States v. Gallo, 123 F.2d 229, 231 (2 Cir. 1941), and the records of the telephone company so kept in the ordinary course of the company's business are entitled to the same evidentiary treatment as the records of other businesses. See Federal Business Records Act, 28 U.S.C. § 1732 (1964). Section 605 was not designed to render evidentially inadmissible the records made in the ordinary course of the telephone company's business and which are essential to the ordinary operation of that business." *Id.* at 542.

We adopt Judge Waterman's reasoning and conclusion as the rule of this circuit. *Accord,* United States v. Cerone, 7 Cir., 1971, 452 F.2d 274, 289. *Compare* Di-Piazza v. United States, 6 Cir., 1969, 415 F.2d 99; *see also* Nolan v. United States, 10 Cir., 1969, 423 F.2d 1031; Bubis v. United States, 9 Cir., 1967, 384 F.2d 643; United States v. Baxter, 9 Cir., 1973, 492 F.2d 150, 165–168.

### 4. *Untimely and Inadequate Discovery*

Defendants' final point is that they were prejudiced because, as to certain items, discovery provided by the government was both untimely and inadequate.

On November 16, the government learned of a report compiled by the Bureau of Narcotics and Dangerous Drugs, which related to an interview with Mason. On November 17, the report was provided to the defendants. The court found that the material contained in the report was covered in other Jencks Act material that had been turned over to the defendants. In addition, Mason was made available for cross-examination upon the report.

On November 17, a report of Customs Agent Walley's interview with Mason was furnished to defendants. Walley was withdrawn as a witness so that he could be examined upon the report, which he subsequently was.

At one point in his testimony, Dillon produced a pocket phone book which he used to refresh his recollection as to certain telephone numbers he had called. Assuming *arguendo* that the government erred in not earlier producing a copy of this pocket phone book, the error was harmless.

On November 8, 1972, the government provided the court with notes taken by customs agents of their conversations with witness Dillon, and two draft reports based on conversations with witness Mason. On November 9 and 10, the court made these notes and reports available to the defendants, with the exception of a portion of one of the Mason draft reports. The appellants contend that they should have been given the excised portion. We have examined the excised material, and we agree with the trial court that it did not relate to the subject matter of Mason's testimony. 18 U.S.C. § 3500(c).

We can find no prejudice arising from any of these events.

Affirmed.