OPINION *Page 2 
{¶ 1} Defendant-appellant Terrence R. Williams appeals his conviction in the Stark County Court of Common Pleas on one count of domestic violence, a felony of the fourth degree in violation of R.C. 2919.25(A). Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACT AND CASE {¶ 2} Shortly after noon on November 26, 2006, Perry Township Police Officer Steven Stone responded to a 911 call at the Chase Motel. When he entered the room to investigate the call, he found Christina Anderson sitting on the corner of the bed crying and very upset. Officer Stone noticed a lot of beer cans and bottles lying around the motel room, as well as some thrown pizza. He also saw a bloody towel on the floor of the room. Ms. Anderson was crying and bleeding from the head, and Officer Stone noticed some scratch marks on her. When the officer asked her what had happened, Ms. Anderson said that her boyfriend, appellant, had beaten her up.
 {¶ 3} Officer Stone searched the room for evidence. Ms. Anderson had told him that appellant had dragged her by the hair. Officer Stone found a clump of her hair on the floor. Ms. Anderson also told Officer Stone that she had been knocked out when appellant shoved her in the bathroom and she struck her head on the bathtub. Officer Stone found bloody washrags in the bathtub. Finding no one else in the room, Officer Stone secured it after the paramedics took Ms. Anderson to the hospital.
 {¶ 4} Officer Stone went to the hospital to further interview Ms. Anderson. However, he was unable to interview her because of her concussion. Officer Stone spoke with Ms. Anderson the next day at the hospital. At this time, Ms. Anderson was hostile and did not want to answer any questions or give any information. What *Page 3 
information she did provide, however, was consistent with the statements she made at the motel the day before.
 {¶ 5} Dr. Gary Richardson, an emergency physician at Doctor's Hospital, examined and treated Ms. Anderson. Ms. Anderson told medical personnel that she had been fighting with someone who had punched her and knocked her into the bathtub. As a result of hitting the bathtub, Ms. Anderson lost consciousness. Dr. Richardson noticed some bruising and swelling around Ms. Anderson's left eye, as well as multiple contusions on her upper and lower extremities. Ms. Anderson also had a comminuted sacral fracture, meaning that her sacrum — the bone above her coccyx or tailbone — had been fractured in several places. Finally, medical tests revealed that Ms. Anderson had a 0.40 blood-alcohol level. In conjunction with this high alcohol level, Dr. Richardson also noticed that Ms. Anderson had depression of her mentation (i.e., her mental activity or thinking).
 {¶ 6} Appellant testified at trial in his own defense. Appellant worked as a pipe welder, and worked all over the country. Appellant and Ms. Anderson had been in a boyfriend-girlfriend relationship for the last five years. They had in fact lived together in Stark County during that time. Thus, appellant called Ms. Anderson at her parents' home that Saturday and invited her to be with him while he was in town.
 {¶ 7} According to appellant, he picked up Ms. Anderson around 5:30 in the morning. He then drove to their room at the Chase Motel, but appellant could tell that Ms. Anderson was already intoxicated. Ms. Anderson was staggering and was mean and violent towards appellant. Appellant had seen Ms. Anderson excessively drunk in the past, and on many such occasions, she became delusional, saying that things *Page 4 
happened when they had not. Once they arrived at the motel, Ms. Anderson started hitting appellant. Instead of putting up with this behavior on his girlfriend's part, appellant left to run some errands. When he finished these errands, appellant returned to the motel around 3:30 in the afternoon. According to appellant, he found his girlfriend "totally drunk" and "out of hand." He therefore left and did not see her again.
 {¶ 8} Due to a 2005 conviction for domestic violence in the Massillon Municipal Court, the domestic violence offense was charged as a felony.
 {¶ 9} At the conclusion of trial, the jury found appellant guilty of the domestic violence charge. Upon accepting the jury's verdict and convicting Williams, the court sentenced him to a twelve-month prison term.
 {¶ 10} Appellant timely filed the instant appeal and raises the following two assignments of error for our consideration:
 {¶ 11} "I. THE JURY VERDICT FINDING APPELLANT GUILTY OF DOMESTIC VIOLENCE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION."
 I. {¶ 12} In his sole assignment of error, appellant maintains that his conviction is against the sufficiency of the evidence and against the manifest weight of the evidence. We disagree.
 {¶ 13} A review of the sufficiency of the evidence and a review of the manifest weight of the evidence are separate and legally distinct determinations. State v. Thompkins, 78 Ohio St. 3d 380, 387,1997-Ohio-52, 678 N.E. 2d 541, superseded by *Page 5 
constitutional amendment on other grounds as stated by State v.Smith, 80 Ohio St. 3d 89, 1997-Ohio-355, 684 N.E. 2d 668. "While the test for sufficiency requires a determination of whether the State has met its burden of production at trial, a manifest weight challenges questions whether the State has met its burden of persuasion." State v.Thompkins, supra at 78 Ohio St.3d 390.
 {¶ 14} In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution. State v.Jenks (1991), 61 Ohio St. 3d 259, superseded by the State constitutional amendment on other grounds as stated in State v. Smith (1997),80 Ohio St. 3d 89.
 {¶ 15} Specifically, an appellate court's function, when reviewing the sufficiency of the evidence to support a criminal conviction, is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v. Jenks, supra. This test raises a question of law and does not allow the court to weigh the evidence. State v. Martin (1983), 20 Ohio App. 3d 172, 175. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."State v. Thompkins, 78 Ohio St. 3d at 386.
 {¶ 16} The Ohio Supreme Court recently addressed the standard of review for a criminal manifest weight challenge, as follows:
 {¶ 17} "The criminal manifest-weight-of-the-evidence standard was explained in State v. Thompkins (1997), 78 Ohio St.3d 380,678 N.E.2d 541. In Thompkins, the court *Page 6 
distinguished between sufficiency of the evidence and manifest weight of the evidence, finding that these concepts differ both qualitatively and quantitatively. Id. at 386, 678 N.E.2d 541. The court held that sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, but weight of the evidence addresses the evidence's effect of inducing belief. Id. at 386-387, 678 N.E. 2d 541. In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's? We went on to hold that although there may be sufficient evidence to support a judgment, it could nevertheless be against the manifest weight of the evidence. Id. at 387, 678 N.E. 2d 541. `When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the fact finder's resolution of the conflicting testimony.' Id. at 387, 678 N.E.2d 541, citing Tibbs v. Florida (1982), 457 U.S. 31, 42, 102 S.Ct. 2211,72 L.Ed.2d 652.
 {¶ 18} "Both C.E. Morris Co., 54 Ohio St.2d 279, 8 O.O.3d 261,376 N.E.2d 578, and Thompkins instruct that the fact-finder should be afforded great deference. However, the standard in C.E. Morris Co. tends to merge the concepts of weight and sufficiency. See State v. Maple
(Apr. 2, 2002), 4th Dist. No. 01CA2605, 2002 WL 507530, fn. 1; State v.Morrison (Sept. 20, 2001), 10th Dist. No. 01AP-66, 2001 WL 1098086. Thus, a judgment supported by "some competent, credible evidence going to all the essential elements of the case" must be affirmed. C.E. MorrisCo. Conversely, under Thompkins, even though there may be sufficient evidence to support a conviction, a reviewing court can still re-weigh the evidence and reverse a lower court's holdings. State v.Thompkins, 78 Ohio St.3d 380, 678 N.E.2d 541. Thus, the civil-manifest-weight-of-the-evidence *Page 7 
standard affords the lower court more deference then does the criminal standard. See Barkley v. Barkley (1997), 119 Ohio App. 3d 155, 159,694 N.E.2d 989." State v. Wilson, 713 Ohio St. 3d 382, 387-88,2007-Ohio-2202 at ¶ 25-26; 865 N.E. 2d 1264, 1269-1270.
 {¶ 19} However, an appellate court may not merely substitute its view for that of the jury, but must find that "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins, supra,78 Ohio St. 3d at 387. (Quoting State v. Martin (1983),20 Ohio App. 3d 172, 175, 485 N.E.2d 717, 720-721). Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." Id.
 {¶ 20} In State v. Thompkins, supra, the Ohio Supreme Court held "[t]o reverse a judgment of a trial court on the basis that the judgment is not sustained by sufficient evidence, only a concurring majority of a panel of a court of appeals reviewing the judgment is necessary." Id. at paragraph three of the syllabus. However, to "reverse a judgment of a trial court on the weight of the evidence, when the judgment results from a trial by jury, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required." Id. at paragraph four of the syllabus; State v. Miller (2002), 96 Ohio St. 3d 384,2002-Ohio-4931 at ¶ 38, 775 N.E.2d 498.
 {¶ 21} To find appellant guilty of domestic violence the jury would have to find that appellant knowingly caused or attempted to cause physical harm to a family or household member. R.C. 2919.25(A). A person who has cohabited with the offender within five years prior to the date of the alleged commission of the act in question is a *Page 8 
"family or household member." R.C. 2919.25(F) (2). Physical harm to persons is defined as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A) (3).
 {¶ 22} The parties do not dispute that the victim was injured and taken to the hospital for treatment. The dispute centers upon the fact that the victim did not testify at trial. The State utilized the victim's statements made to Officer Stone describing what had happened to her in the motel room. However, substantive evidence apart from the victim's statements was introduced to independently establish that appellant was the person who injured the victim.
 {¶ 23} Officer Stone saw the victim bleeding from the head, and found a bloody towel in the motel room, as well as bloody washrags in the bathtub. More significantly, he found a clump of the victim's hair on the floor, corroborating her story that she had been dragged by her hair during the beating.
 {¶ 24} Dr. Richardson noticed some bruising and swelling around the victim's left eye, as well as multiple contusions on her upper and lower extremities. She also had a comminuted sacral fracture, meaning that her sacrum — the bone above her coccyx or tailbone — had been fractured in several places. Dr. Richardson identified medical records and photographs of the victim's injuries.
 {¶ 25} Appellant testified that he and the victim had lived together in Stark County, Ohio within the last five years. (T. at 134-135). Appellant admitted to calling her at the home of her parents. He further admitted to driving her to his motel room at 5:30 a.m. on the day in question. Appellant claimed at that point to have left the motel almost immediately because of the victim's drunken, violent state. (T. at 131-132). He *Page 9 
returned to the motel around 3:30 p.m. for five (5) minutes. Appellant then left the Chase Motel and did not return. (T. at 132-33).
 {¶ 26} Viewing this evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that appellant had committed the crime of domestic violence.
 {¶ 27} We hold, therefore, that the State met its burden of production regarding each element of the crime of domestic violence and, accordingly, there was sufficient evidence to support appellant's conviction.
 {¶ 28} "A fundamental premise of our criminal trial system is that `the jury is the lie detector.' United States v. Barnard, 490 F.2d 907,912 (C.A.9 1973) (emphasis added), cert. denied, 416 U.S. 959,94 S.Ct. 1976, 40 L.Ed.2d 310 (1974). Determining the weight and credibility of witness testimony, therefore, has long been held to be the `part of every case [that] belongs to the jury, who are presumed to be fitted for it by their natural intelligence and their practical knowledge of men and the ways of men.' Aetna Life Ins. Co. v. Ward, 140 U.S. 76, 88,11 S.Ct. 720, 724-725, 35 L.Ed. 371 (1891)". United States v. Scheffer
(1997), 523 U.S. 303, 313, 118 S.Ct. 1261, 1266-1267.
 {¶ 29} Although appellant cross-examined the witnesses and argued that the victim's injuries were the result of her drunken state and further, that the State failed to prove that she had identified appellant as having caused her injuries, the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact.State v. Jamison (1990), 49 Ohio St.3d 182, certiorari denied (1990),498 U.S. 881.
 {¶ 30} The jury was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the jury may take note of the *Page 10 
inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence". State v. Craig (Mar. 23, 2000), Franklin App. No. 99AP-739, citing State v. Nivens (May 28, 1996), Franklin App. No. 95APA09-1236 Indeed, the jurors need not believe all of a witness' testimony, but may accept only portions of it as true. State v. Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21, citing State v. Antill (1964), 176 Ohio St. 61, 67,197 N.E.2d 548.; State v. Burke, Franklin App. No. 02AP-1238, 2003-Ohio-2889, citing State v. Caldwell (1992), 79 Ohio App.3d 667, 607 N.E.2d 1096. Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence.State v. Jenks (1991), 61 Ohio St. 3d 259, 574 N.E. 2d 492.
 {¶ 31} After reviewing the evidence, we cannot say that this is one of the exceptional cases where the evidence weighs heavily against the conviction. The jury did not create a manifest injustice by concluding that appellant was guilty of the crime charged in the indictment.
 {¶ 32} We conclude the trier of fact, in resolving the conflicts in the evidence, did not create a manifest injustice to require a new trial.
 {¶ 33} Appellant's sole assignment of error is overruled. *Page 11 
 {¶ 34} For the foregoing reasons, the judgment of the Stark County Court of Common Pleas is affirmed.
 Gwin, P.J., Farmer, J., and Wise, J., concur *Page 12 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas is affirmed. Costs to appellant. *Page 1