[Cite as *State v. Tate*, 2013-Ohio-5150.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Craig R. Baldwin, J. |
| vs. | : | |
| | : | Case No. 13 CA 5 |
| LLOYD TATE | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:         Appeal from the Court of Common Pleas,
                                 Case No.  2012 CR 666D


JUDGMENT:                        Affirmed


DATE OF JUDGMENT ENTRY:          November 21, 2013


APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

JAMES J. MAYER                            BYRON D. CORLEY
PROSECUTING ATTORNEY                      22 North Walnut Street
JILL M. COCHRAN                           Mansfield, Ohio  44902
ASSISTANT PROSECUTOR
38 South Park Street
Mansfield, Ohio  44902

*Wise, J.*

**{¶1}** Appellant Lloyd Tate appeals his conviction and sentence on one count of Attempted Murder, with a Repeat Violent Offender Specification entered in the Richland County Court of Common Pleas, following a jury trial. Appellant was also found guilty of two counts of felonious assault, which the trial court found to be allied offenses to the Attempted Murder charge.

**{¶2}** Appellee is State of Ohio.

## STATEMENT OF THE FACTS AND CASE

**{¶3}** On September 7, 2012, at approximately 11:15 p.m., 911 dispatch received a call about a hit and run. The caller told dispatch, "Yeah, I ain't never seen nothing like that before. The guy was trying to walk away, and he just ran him over, twice." (T. at 62-65). The incident occurred in a field located between Lexington Avenue and Main Street in Mansfield, Ohio, near the Culligan Company at 350 S. Main Street. This field was separated from Antibus Place, an alley that runs between Lexington Avenue and Main Street, by a row of railroad ties stacked two high.

**{¶4}** Curtis Nixon, Darryl Elkins and Lisa Carter all witnessed the incident.

**{¶5}** Curtis Nixon and Darryl Elkins were at Elkins' home at 46 Greenwood Avenue watching television and drinking coffee when they heard arguing in the alley and looked out the window. (T. at 43-44, 142-144). They saw a light-colored Chevy pickup truck in the alley. (T. at 45, 146). They observed one person in the truck and one person standing outside of the driver's door. (T. at 46, 47, 144, 146-147). Mr. Nixon and Mr. Elkins were unable to hear what the argument was about, and neither saw any physical contact between the driver and the person standing outside the vehicle. (T. at

44, 46, 61, 77, 146-147, 152-153, 159). They recalled that they witnessed the verbal argument for less than a minute before the man outside the vehicle started walking away. (T. at 46-47, 147-148, 152). They stated that when the man walked in front of the truck, the truck suddenly leapt forward, striking the man head-on. The vehicle then veered left to jump over the railroad ties, entering the field. (T. at 48-49, 56, 90, 148). The victim was dragged under the truck. (T. at 49, 148,154). The truck spun around in the field, doing what the witnesses described as two "doughnuts" before exiting the field, smashing through a second set of railroad ties. (T. at 49, 59, 148, 153). Mr. Nixon called 911 as he ran outside to assist the victim. (T. at 49, 62-66). Mr. Elkins also came outside. (T. at 148). Mr. Nixon described the victim's legs as being "tied" and twisted. (T. at 50-51). The victim told Mr. Nixon and Mr. Elkins that the driver of the vehicle was Lloyd Tate, the Appellant. (T. at 62-66, 149). This information was given to the 911 dispatcher. They stated that the victim was so afraid that he kept saying that he had to get up the hill to get away from Appellant. (T. at 51). Mr. Nixon and Mr. Elkins encouraged the victim to remain still until help arrived. Mr. Elkins and Mr. Nixon did not know either the victim or Appellant. (T. at 51, 66, 149, 159).

{¶6} At trial, both Nixon and Elkins testified that they did not believe that what they saw was an accident. Mr. Nixon stated "You don't run somebody ... If you got mad at somebody and ran them over ... You don't run somebody over for no reason. That's not an accident. And do two doughnuts over them? That's not an accident." (T. at 68). Mr. Elkins testified "Who does that on an accident? Do two doughnuts over somebody then leave." (T. at 155).

{¶7}   Lisa Carter, who lives at 56 Greenwood Avenue, testified similarly. (T. at 185-206). Ms. Carter knows the Appellant, who was dating her husband's cousin, Debra Carter, at the time of the incident. (T. at 187, 231). She testified that she had seen Appellant earlier in the day, at around 3:00 p.m., parked in front of her house. (T. at 188). She stated that Debra Carter's daughter, Breanna, was moving to a home off of Antibus Place and Appellant and Debra were helping her move. (T. at 188-190). She further testified that later that evening, she heard arguing in the alley and looked outside. (T. at 191, 233). She stated that she recognized Appellant's voice and his truck. (T. at 188, 202, 227). She recalled that she did not see the truck at first, but that she saw the victim running in front of the truck then saw the truck as it ran down the victim and mounted the railroad ties to enter the field. (T. at 215, 232).

{¶8}   When police arrived to the scene, they found the victim, Louis Mason Jr., lying in the field in the middle of a double circle of tire marks. (T. at 169-170, 173, 336-337). Mr. Mason was alert and talking and was able to name Appellant as the person who ran him over. (T. at 170). He was taken to the emergency room at Mansfield MedCentral Hospital where he was triaged as a Level One, with the most severe of injuries. (T. at 97).  Mr. Mason suffered from fractures of his ribs, mainly to the right side of his chest. (T. at 100). He had a large pulmonary contusion and his lung had been punctured by a broken rib. (T. at 100-101). He also had significant second degree burns on his right arm and on his right chest wall. Dr. Anthony Midkiff testified that these burns were not caused by road rash. (T. at 102-103). Mr. Mason's right knee had detached from the tendons and ligaments. (T. at 104). The left leg had bad fractures and the ankle was found also to have been separated. (T. at 106). Mr. Mason was stabilized at

MedCentral and then sent to Grant Medical Center due to the severity of his leg injuries and the possibility that there had been damage to arteries in his legs, (T. at 107).

{¶9} Lieutenant Joyce Stortz was on duty when the suspect's vehicle was put out on the wire. (T. at 242). She entered the license plate number into the computer and found that it came back to Appellant. (T. at 242). Lt. Stortz testified that she was familiar with Appellant and knew where he lived. (T. at 242). She went to Appellant's address on Bowman Street and located the vehicle parked across the street from Appellant's home. (T. at 243). After waiting for backup, Lt. Stortz approached Appellant's home and knocked on the door. (T. at 244). Appellant came to the door with his hands in the air. The first thing that Appellant stated upon opening the door was, "I didn't run anyone over." (T. at 245-246, 342).

{¶10} Lieutenant Stortz testified that Appellant denied running Mr. Mason over with the vehicle and that he was evasive in answering questions, becoming more agitated the longer the conversation continued. (T. at 247). She also testified that she could detect an odor of alcohol on Appellant, and that he admitted he had been at a bar with Mr. Mason. (T. at 248).

{¶11} On October 9, 2012, as a result of the above incident, Appellant was indicted on one count of Attempted Murder, a felony of the first degree, and two counts of Felonious Assault, one for causing serious physical harm and one for use of a deadly weapon, both felonies of the second degree. A Repeat Violent Offender Specification and a Vehicle Forfeiture Specification was attached to each count of the indictment

{¶12} On December 13, 2012, this matter proceeded to a jury trial. The trial continued on the 14th and concluded on December 20, 2012. The State presented the

testimony of the three eyewitnesses: Curtis Nixon, Darryl Elkins, and Lisa Carter; three police officers, the treating physician and the victim, Mr. Mason.

**{¶13}** Appellant testified on his own behalf and also called Officer Tina Mahon. In rebuttal, the State recalled Lieutenant Stortz and called Dr. Paul Ritenour to rebut Appellant's testimony regarding the extent of the injuries he allegedly suffered at the hands of Mr. Mason.

**{¶14}** The jury found Appellant guilty of all three counts in the indictment. The trial court then heard arguments regarding the Repeat Violent Offender Specification. The State offered Appellant's conviction for Robbery from 1989. The trial court found Appellant guilty of the Repeat Violent Offender Specification. The trial court also granted the forfeiture of Appellant's truck.

**{¶15}** The trial court sentenced Appellant to eleven (11) years on the charge of Attempted Murder and two (2) years on the Repeat Violent Offender Specification. The felonious assault charges were found to be allied offenses to the Attempted Murder charge.

**{¶16}** Appellant now appeals to this Court, assigning the following errors for review:

## ASSIGNMENTS OF ERROR

**{¶17}** "I. THE TRIAL COURT ERRORED [SIC] AS A MATTER OF LAW WHEN IT DETERMINED THAT LLOYD TATE PURPOSELY ENGAGED IN CONDUCT INTENDING TO CAUSE THE DEATH OF LOUIS MASON.

{¶18} "II. IT WAS AN ERROR TO SENTENCE TATE TO AN ADDITIONAL TWO YEARS IN EXCESS OF STATUTORY MAXIMUM SENTENCE ON THE REPEAT VIOLENT OFFENDER SPECIFICATION."

**I.**

{¶19} In his First Assignment of Error, Appellant claims his conviction was against the manifest weight and sufficiency of the evidence. We disagree.

{¶20} In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, 'weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " S*tate v. Thompkins,* 78 Ohio St.3d 380, 387, 678 N.E.2d 541, 1997-Ohio-52, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717.

{¶21} An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

{¶22} In the instant case, Appellant was convicted of attempted murder in violation of R.C. 2923.02(A) and R.C. 2903.02(B) which state the following:

**{¶23}** "[R.C. 2923.02(A) ] No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense.

**{¶24}** "[R.C. 2903.02] (A) No person shall purposely cause the death of another or the unlawful termination of another's pregnancy.

**{¶25}** Appellant was also convicted of felonious assault in violation of R.C. 2903.11(A)(1) and (A)(2) which states the following:

**{¶26}** "(A) No person shall knowingly do either of the following:

**{¶27}** "(1) Cause serious physical harm to another or to another's unborn;

**{¶28}** "(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance."

**{¶29}** Based on the testimony of three eyewitnesses, as set forth in detail above in the recitation of the facts, the jury in this case could have reasonably concluded that Appellant purposely engaged in conduct, which, if successful, could have caused the death of another. Two of the eyewitness, Mr. Nixon and Mr. Elkins, both testified they believed Appellant purposefully ran down Mr. Mason. (T. at 68, 155). Similarly, the victim, Mr. Mason, testified he and Appellant had an argument, that he attempted to walk away and when he turned around, he saw Appellant's car headed right toward him.

**{¶30}** Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that appellant had committed the crime of attempted murder by purposely running over the victim with his car. We hold, therefore, that the state met its burden of production

regarding each element of the crime and, accordingly, there was sufficient evidence to support appellant's conviction.

{¶31} "A fundamental premise of our criminal trial system is that 'the *jury* is the lie detector.' *United States v. Barnard,* 490 F.2d 907, 912 (C.A.9 1973) (emphasis added), cert. denied, 416 U.S. 959, 94 S.Ct. 1976, 40 L.Ed.2d 310 (1974). Determining the weight and credibility of witness testimony, therefore, has long been held to be the 'part of every case [that] belongs to the jury, who are presumed to be fitted for it by their natural intelligence and their practical knowledge of men and the ways of men.' *Aetna Life Ins. Co. v. Ward,* 140 U.S. 76, 88, 11 S.Ct. 720, 724-725, 35 L.Ed. 371 (1891)". *United States v. Scheffer* (1997), 523 U.S. 303, 313, 118 S.Ct. 1261, 1266-1267, 140 L.Ed.2d 413.

{¶32} Appellant cross-examined the State's witness and further testified in his defense in an attempt to rebut the State's case.

{¶33} The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. Jamison* (1990), 49 Ohio St.3d 182, 552 N.E.2d 180, certiorari denied (1990), 498 U.S. 881, 111 S.Ct. 228, 112 L.Ed.2d 183.

{¶34} The jury was free to accept or reject any and all of the evidence offered by Appellant and the State and assess the witness's credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence". *State v. Craig* (Mar. 23, 2000), Franklin App. No. 99AP739, citing *State v. Nivens* (May 28, 1996), Franklin App. No. 95APA09-1236 Indeed, the jurors need not believe all of a witness' testimony, but may accept only portions of it as

true. *State v. Raver,* Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21, citing *State v. Antill* (1964), 176 Ohio St. 61, 67, 197 N.E.2d 548.; *State v. Burke,* Franklin App. No. 02AP-1238, 2003-Ohio-2889, citing *State v. Caldwell* (1992), 79 Ohio App.3d 667, 607 N.E.2d 1096. Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492.

{¶35} After reviewing the evidence, we cannot say this is one of the exceptional cases where the evidence weighs heavily against the convictions. The jury did not create a manifest injustice by concluding Appellant was guilty of the crimes charged in the indictment. The jury heard the witnesses, evaluated the evidence, and was convinced of Appellant's guilt.

{¶36} We conclude the trier of fact, in resolving the conflicts in the evidence, did not create a manifest injustice requiring a new trial.

{¶37} The State presented sufficient evidence to support the conviction, and Appellant has not demonstrated that the jury lost its way in believing the testimony of the witnesses.

{¶38} Based on the foregoing, we find Appellant's First Assignment of Error not well-taken and hereby overrule same.

## II.

{¶39} In his Second Assignment of Error, Appellant argues that the trial court erred in finding him to be a repeat violent offender and sentencing him to two years consecutive to the maximum sentence on the attempted murder charge. We disagree.

{¶40} In the instant case, Appellant maintains that the trial court was required but failed to make a finding that Appellant "caused or threatened to cause serious physical harm to another" in his 1989 robbery conviction.

{¶41} The definition of Repeat Violent Offender is contained in R.C. 2929.01, which provides:

{¶42} "(CC) "Repeat violent offender" means a person about whom both of the following apply:

{¶43} "(1) The person is being sentenced for committing or for complicity in committing any of the following:

{¶44} "(a) Aggravated murder, murder, any felony of the first or second degree that is an offense of violence, or an attempt to commit any of these offenses if the attempt is a felony of the first or second degree;

{¶45} "(b) An offense under an existing or former law of this state, another state, or the United States that is or was substantially equivalent to an offense described in division (CC)(1)(a) of this section.

{¶46} "(2) The person previously was convicted of or pleaded guilty to an offense described in division (CC)(1)(a) or (b) of this section."

{¶47} Here, Appellant was convicted of Attempted Murder in the instant case and was previously convicted of Robbery, in violation of R.C. 2901.01(A)(9)(a), a second degree felony.

{¶48} Pursuant to R.C. 2929.14(B)(2)(a), in addition to the longest prison term authorized for the offense, the sentencing court may impose an additional definite prison

term of one, two, three, four, five, six, seven, eight, nine, or ten years for the repeat violent offender specification, if all of the following criteria are met:

**{¶49}** "(i) The offender is convicted of or pleads guilty to a specification of the type described in section 2941.149 of the Revised Code that the offender is a repeat violent offender.

**{¶50}** "(ii) The offense of which the offender currently is convicted or to which the offender currently pleads guilty is * * * any felony of the first degree that is an offense of violence and the court does not impose a sentence of life imprisonment without parole.

**{¶51}** "(iii) The court imposes the longest prison term for the offense that is not life imprisonment without parole.

**{¶52}** "(iv) The court finds that the prison terms imposed * * * are inadequate to punish the offender and protect the public from future crime, because the applicable factors under section 2929.12 of the Revised Code indicating a greater likelihood of recidivism outweigh the applicable factors under that section indicating a lesser likelihood of recidivism.

**{¶53}** "(v) The court finds that the prison terms imposed * * * are demeaning to the seriousness of the offense, because one or more of the factors under section 2929.12 of the Revised Code indicating that the offender's conduct is more serious than conduct normally constituting the offense are present, and they outweigh the applicable factors under that section indicating that the offender's conduct is less serious than conduct normally constituting the offense."

**{¶54}** In the case at hand, Appellant was found guilty of attempted murder, a first-degree felony, and two second-degree counts of felonious assault, all three

offenses of violence.   The charged contained in one of the felonious assault counts specifically charged Appellant with causing serious physical harm to the victim.

**{¶55}** At sentencing, the trial court sentenced Appellant to the maximum term of imprisonment on the attempted murder count. Thus, the criteria contained in R.C. 2929.14(B)(2)(a)(i), (ii), and (iii) are met in the instant matter.

**{¶56}** Appellant's Second Assignment of Error is overruled.

**{¶57}** Accordingly the judgment of the Court of Common Pleas of Richland County, Ohio, is affirmed.

By: Wise, J.

Gwin, P.J and

Baldwin, J. concur.

_____
HON. JOHN W. WISE

_____
HON. W. SCOTT GWIN

_____
HON. CRAIG. R. BALDWIN

JWW/d 1115

[Cite as *State v. Tate*, 2013-Ohio-5150.]

IN THE COURT OF APPEALS FOR RICHLAND COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| LLOYD TATE | : | |
| | : | |
| Defendant-Appellant | : | CASE NO. 13 CA 5 |

For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Court of Common Pleas, Richland County, Ohio, is affirmed.

Costs assessed to Appellant.

_____
HON. JOHN W. WISE

_____
HON. W. SCOTT GWIN

_____
HON. CRAIG R. BALDWIN