[Cite as *State v. Ussery*, 2020-Ohio-4771.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | Hon. W. Scott Gwin, J.<br>Hon. Patricia A. Delaney, J. |
| -vs- | |
| | Case No. 2019CA00081 |
| JOHN T. USSERY, JR. | |
| Defendant-Appellant | O P I N IO N |

CHARACTER OF PROCEEDINGS:     Appeal from the Stark County Court of
                              Common Pleas, Case No. 2018-CR-1919

JUDGMENT:                     Affirmed

DATE OF JUDGMENT ENTRY:       October 2, 2020

APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

JOHN D. FERRERO                       DONOVAN HILL
Prosecuting Attorney,                 116 Cleveland Avenue, N.W.
Stark County, Ohio                    808 Courtyard Centre
                                      Canton, Ohio  44702
KRISTINE W. BEARD
Assistant Prosecuting Attorney
Appellate Section
110 Central Plaza, South – Suite 510
Canton, Ohio  44702-1413

*Hoffman, P.J.*

**{¶1}** Appellant John T. Ussery, Jr. appeals the judgment entered by the Stark County Common Pleas Court convicting him of sexual battery (R.C. 2907.03(A)(5)) and gross sexual imposition (R.C. 2907.05(A)4)), and sentencing him to eight years incarceration. Appellee is the state of Ohio.

STATEMENT OF THE FACTS AND CASE

**{¶2}** When N.B. was between the ages of 5 to 7, her biological father and her stepmother, L.W., divorced. N.B.'s biological mother was not involved in her life, and she refers to her stepmother as her "mom." After the divorce, N.B. divided her time between her father's home and her stepmother's home on the same schedule as her brothers, despite the fact there was no formal custody arrangement as to N.B.

**{¶3}** Appellant began dating L. W. when N.B. was ten years old, and moved in to L.W.'s home. On July 18, 2018, the family went out to dinner at a restaurant, and went shopping afterwards. Upon returning home, they played a game. N.B. went to bed around 8:00-9:00 p.m. At around 2:30 a.m., Appellant entered N.B.'s bedroom, shut the door, and closed the blinds. He slid into bed behind N.B., pulled down her underwear, and rubbed his penis on N.B.'s butt and front. After ejaculating, Appellant got out of bed, turned on the hall light, shut the door, and left. When L.W. got up at 3:00 a.m. to use the bathroom, she noted Appellant was awake. N.B. cried herself to sleep.

**{¶4}** Before leaving for work the next morning, L.W. checked on N.B. N.B. did not disclose the incident to her stepmother. After Appellant left for work, N.B. borrowed a phone from a neighbor, and called 911. She told the 911 dispatcher she had been raped.

**{¶5}** Officer Daniel Kunkle and Detective Brian Ayers responded to the call. They met N.B. on the porch. After speaking with her, police called her father, and asked him to pick up the children and to take N.B. to Akron Children's Hospital.

**{¶6}** Jennifer Gierlach, a caseworker at Akron Children's Hospital, conducted a forensic interview with N.B. Based on N.B.'s description of the incident, Gierlach referred N.B. to the CARE center of the hospital for further evaluation. N.B. was examined by Dr. Charles Lee. Using a sexual assault kit, he swabbed N.B.'s vaginal and anal area.

**{¶7}** Det. Ayers met with Appellant and L.W. at the police station. Appellant denied he had been sexually inappropriate with N.B., but consented to an oral swab of his cheek for a DNA sample. As the detective left the interview room, he heard Appellant say, "That damn child." Tr. (II) 559.

**{¶8}** The swabs taken by Dr. Lee and other evidence collected by police were submitted to the Ohio Bureau of Investigation for further analysis. Forensic scientist Stacy Violi tested the swabs for DNA. She found acid phosphate on the swab taken from N.B.'s vagina, which indicated the presence of semen. She found DNA of an unknown male, of insufficient quantity to determine the source. The anal swab and swabs taken from N.B.'s thighs were negative for acid phosphate activity, but also indicated the presence of the DNA of a male, in insufficient quantities to determine the source. A sample taken from the crotch of N.B.'s underwear tested positive for acid phosphate activity, and positive for a mixture of N.B.'s DNA, Appellant's DNA, and an unknown DNA.

**{¶9}** The samples were forward to Hallie Dreyer for Y-STR testing, which involves splitting the samples which tested positive for acid phosphate into two separate fractions: a sperm fraction and a non-sperm fraction. The vaginal sample provided a

male DNA profile suitable for DNA comparison. Appellant's DNA was detected in both the non-sperm fraction and the sperm fraction. The probability of Appellant's profile being found in the sperm fraction is 1 in 699 men in the United States.

{¶10} Appellant was indicted by the Stark County Grand Jury on one count of sexual battery and one count of gross sexual imposition. The case proceeded to jury trial in the Stark County Common Pleas Court. Appellant was convicted as charged. The trial court merged the offenses, and sentenced Appellant to eight years incarceration on the sexual battery conviction. It is from the May 1, 2019, judgment of the court Appellant prosecutes this appeal, assigning as error:


THE APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.


{¶11} Appellant argues his convictions were against the manifest weight and sufficiency of the evidence.

{¶12} In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St. 3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541, *quoting State v. Martin*, 20 Ohio App. 3d 172, 175, 485 N.E.2d 717 (1983).

**{¶13}** An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St. 3d 259, 574 N.E.2d 492, paragraph two of the syllabus (1991).

**{¶14}** Appellant was convicted of sexual battery in violation of R.C. 2907.03(A)(5):

> (A) No person shall engage in sexual conduct with another, not the spouse of the offender, when any of the following apply:

> (5) The offender is the other person's natural or adoptive parent, or a stepparent, or guardian, custodian, or person in loco parentis of the other person.

**{¶15}** Appellant was also convicted of gross sexual imposition in violation of R.C. 2907.05(A)(4):

> (A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:

> (4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person.

**{¶16}** Sexual conduct is defined by R.C. 2907.01(A):

(A) "Sexual conduct" means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.

**{¶17}** Sexual contact is defined by R.C. 2907.01(B):

(B) "Sexual contact" means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person.

**{¶18}** N.B. testified at trial Appellant came into her bedroom around 2:30 a.m., shut the blinds, closed the door, and climbed into her bed. He pulled down her underwear, and rubbed his penis on her front and on her butt. The vaginal swab taken from N.B. revealed Appellant's DNA in both the sperm and the non-sperm fraction. Further, Appellant's DNA was found in the crotch of N.B.'s underwear. This is sufficient evidence, if believed by the jury, to support Appellant's convictions for sexual battery and gross sexual imposition.

**{¶19}** Appellant argues N.B.'s testimony is not credible, as the details varied when she talked to different adults about the incident and when she testified at trial. He argues N.B. did not like Appellant and wanted to live solely with her father because her father's rules were more lenient. He argues L.W.'s testimony established Appellant had a bad cough on the night in question and could not have left the bedroom without her knowledge, and further she testified N.B. was not an honest child. He argues police failed to test the sheets in N.B.'s room for DNA, and failed to check the blinds for Appellant's fingerprints.

**{¶20}** N.B.'s statements to police, the caseworker at Akron Children's, and her trial testimony did vary on details surrounding the incident. However, as this Court has previously held:

A fundamental premise of our criminal trial system is that 'the *jury* is the lie detector.' *United States v. Barnard,* 490 F.2d 907, 912 (C.A.9 1973) (emphasis added), cert. denied, 416 U.S. 959, 94 S.Ct. 1976, 40 L.Ed.2d 310 (1974). Determining the weight and credibility of witness testimony, therefore, has long been held to be the 'part of every case [that] belongs to the jury, who are presumed to be fitted for it by their natural intelligence and their practical knowledge of men and the ways of men.' *Aetna Life Ins. Co. v. Ward,* 140 U.S. 76, 88, 11 S .Ct. 720, 724–725, 35 L.Ed. 371 (1891)". *United States v. Scheffer* (1997), 523 U.S. 303, 313, 118 S.Ct. 1261, 1266– 1267.

The jury was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence". *State v. Craig* (Mar. 23, 2000), Franklin App. No. 99AP–739, citing *State v. Nivens* (May 28, 1996), Franklin App. No. 95APA09–1236 Indeed, the jurors need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver,* Franklin App. No. 02AP–604, 2003–Ohio–958, at ¶ 21, citing *State v. Antill* (1964), 176 Ohio St. 61, 67, 197 N.E.2d 548.; *State v. Burke,* Franklin App. No. 02AP1238, 2003–Ohio–2889, citing *State v. Caldwell* (1992), 79 Ohio App.3d 667, 607 N.E.2d 1096.

**{¶21}** *State v. Cobb*, 5th Dist. Stark No. 2014 CA 00218, 2015-Ohio-3661, ¶¶ 45-46.

**{¶22}** The jury in this case was made aware of contradictions in N.B.'s various statements to adults involved in the case, yet found her testimony at trial to be credible. We find the jury did not lost its way in believing the testimony of N.B. concerning the conduct of Appellant on the night of July 18, 2018.

**{¶23}** Further, we find the testimony of L.W. does not establish N.B. was not an honest child, nor does it establish Appellant failed to leave the bedroom on the night in question.  L.W. testified Appellant had a bad cough and she did not notice him leaving the bedroom, but she also testified he was awake at 3:00 a.m., shortly after the time frame

given by N.B. for the incident.  L.W. testified at trial N.B. was honest for the most part; N.B. had lied about "stupid stuff like any kid," but has not lied about anything "major."  Tr. (II) 393.  While she admitted she told police N.B. was not an honest child, she reiterated on cross-examination N.B. lies about "stupid stuff."  Tr. (II) 408.  Both N.B. and L.W. testified N.B. did not like Appellant, but L.W. testified N.B. never talked about living solely with her father.

{¶24} As for the failure of the police to fingerprint the blinds or test the bedding in N.B.'s bedroom, finding his fingerprints on the blinds of a room in a house where he resided would be of limited probative value.  Further, as Appellant's DNA was found in the crotch of N.B.'s underwear and on a vaginal swab taken from N.B., we find testing other items in the bedroom would similarly have been of limited probative value.

**{¶25}** We find the jury did not lose its way in convicting Appellant of sexual battery and gross sexual imposition.  The convictions are not against the manifest weight or sufficiency of the evidence.  The assignment of error is overruled.

**{¶26}** The judgment of the Stark County Common Pleas Court is affirmed.

By: Hoffman, P.J.

Gwin, J.  and

Delaney, J. concur