170

UNITED STATES, Appellee

v.

Charles P. WOOLHEATER, Engineman
Second Class, U.S. Navy, Appellant.

No. 93–0766.
CMR No. 92 0126.

U.S. Court of Military Appeals.

Argued May 5, 1994.

Decided Aug. 23, 1994.

For Appellant: *Vaughan E. Taylor* (argued); *Lieutenant David P. Sheldon,* JAGC, USNR (on brief); *Captain Dwight H. Sullivan,* USMC.

For Appellee: *Major Laura L. Scudder,* USMC (argued); *Colonel T.G. Hess,* USMC, and *Commander S.A. Stallings,* JAGC, USN (on brief).

*Opinion of the Court*

CRAWFORD, Judge:

After 5 hours of deliberations, the members convicted appellant of arson, in violation of Article 126, Uniform Code of Military Justice, 10 USC § 926. He was sentenced to a dishonorable discharge, confinement for 12 months, total forfeitures, and reduction to the lowest enlisted grade. The convening authority approved the sentence as adjudged, and the Court of Military Review affirmed the findings and the approved sentence. We granted review on the following issue:

> WHETHER THE NAVY–MARINE CORPS COURT OF MILITARY REVIEW DENIED APPELLANT A FAIR TRIAL BY REFUSING TO GRANT ANY RELIEF AFTER FINDING THAT THE MILITARY JUDGE ERRED WHEN HE RULED THAT DEFENSE EVIDENCE OF SOMEONE ELSE'S BEING SOLELY RESPONSIBLE FOR THE CHARGED OFFENSES "AIN'T RELEVANT."

We hold that the court below erred by not granting appellant relief after finding that the judge erred by ruling that the defense could not present legally and logically relevant evidence that someone else had a motive, knowledge, and opportunity to commit the arson.

## FACTS

The Government charged appellant with setting a fire that occurred on May 25, 1991,

aboard the USS RALEIGH (LPD 1). The Naval Investigative Service (NIS)'s first suspect was Fireman Apprentice Shaner, a member of the ship's crew. Later, the NIS added appellant as a suspect.

The defense theory at trial was that Shaner started the fire. Shaner was questioned by the NIS and took a polygraph examination which was inconclusive. Shaner stated to NIS Special Agent Fletcher that he was "purposely trying to skew the results." Until appellant confessed to the NIS on June 4, 1991, Shaner was a primary suspect.

The NIS advised appellant of his rights and questioned him three times. On the third time on June 4, appellant admitted setting the fire after another sailor, Damage Control Technician Third Class Anthony L. Smith, left the area. Appellant gave a detailed written statement in which he said he acted out of boredom and depression. He described setting the fire using meals-ready-to-eat (MRE) heat tabs, which were stored nearby. He also described in great detail how he used three heat tabs and threw them under the pallets. He said he then went to Damage Control Central, taking about 5 minutes in the process. He described enjoying the rush of fighting the fire, but he admitted that it did more damage than he intended. Appellant even provided two sketches in his own handwriting to illustrate his actions, noting by an arrow and the notation, "Placed lite [sic] heat tabs here." The defense made no motion to suppress this confession, and appellant concedes that it was voluntary. Final Brief at 12.

The Government's case centered around appellant's statement to the NIS. Dr. Parker, a child and adult psychiatrist, testified for the defense that appellant was the son of an alcoholic father who emotionally abused him. Dr. Parker said that, when appellant was pressured by his father in an emotional way, he would assume the blame. Thus, when confronted with a stressful NIS interrogation, appellant "would back away from it by confessing." During the interrogation, Agent Fletcher told appellant that the NIS had evidence against him. This apparently was not accurate. Special Agent Fletcher

admitted at trial that he uses the tactic of giving the suspect the impression that he is convinced of the suspect's guilt as a method of trying to get a confession.

Special Agent Fletcher testified that Shaner had been interviewed by him and made statements concerning the fire. Shaner stated that the fire started in the MREs, talked about the burn pattern within the MREs, and explained how someone would go down into the MREs to light the fire.

During cross-examination, defense counsel asked Special Agent Fletcher a number of questions concerning statements which Fireman Shaner had made. The military judge interrupted defense counsel and ordered a session under Article 39(a), UCMJ, 10 USC § 839(a). At this session he asked defense counsel to explain the relevance of Shaner's statements. The defense explained that Shaner's comments to Fletcher showed that "Shaner had knowledge of exactly how the fire was started." The judge responded, "Would you explain how it's relevant under [Mil.R.Evid.] 402?" Defense counsel responded, "Defense's theory of the case is that Shaner started the fire. Shaner's statements are admissible to show that he started the fire." The judge interrupted, "Well, counsel, I've allowed you to take direct and cross-examination way, way, way beyond its intended purpose. Now, if you intend to call this special agent as your witness, you're allowed to do that." The defense then argued that the failure of the judge to allow the testimony concerning Shaner "violates" appellant's "due process rights." The judge persisted in his ruling.

During the defense's case, the defense attempted to present evidence that Fireman Shaner frequented the area where the fire had started. The judge asked, "Where are you going with this?" The defense replied, "Habit evidence, sir, admissible under ..." The judge interrupted, "We're not going into that, Lieutenant. Members you're excused." During the subsequent Article 39(a) session, the following colloquy occurred:

MJ: ... Habit of what, Lieutenant?

DC: Sir, this witness will testify that he works with Fireman Shaner, that Fire-

man Shaner has a propensity to go down to the lower "V," hang out in the lower "V," and habit evidence under the MRE, Military Rules of Evidence, is admissible to show conformity.

MJ: For what? Lieutenant, habit is an interesting rule of evidence, but it has to relate and has to be relevant. Now, if it doesn't have anything to do with what happened on the night of the 24th, it doesn't have to do with anything that this Petty Officer saw that evening. Do you want to explain how it's relevant?

DC: Yes, sir. Fireman Shaner's hangout place is down in the lower "V." He'd go down there to get away all the time.

MJ: Well, that's interesting, but I'm not sure it's relevant.

DC: Sir, it's clearly relevant to the defense's case in chief here that Fireman Shaner would have the opportunity to be down there because it's his habit to go down there.

The judge also ruled that this evidence was inadmissible. Later the defense called Signalman Second Class Maronde. When appellant attempted to elicit testimony concerning a statement Shaner made 2 days after the fire concerning his "animosity towards the commanding officer and the USS RALEIGH," the judge once again ruled that the evidence was inadmissible. Later, when Shaner was called as a witness, he denied ever making statements about being unhappy or having any animosity towards the Navy. When Maronde was called back as a defense witness to rebut Shaner's earlier statements, the judge ruled that this evidence was not relevant.

In rebuttal the prosecution called Fireman Apprentice Shannon F. Westberry and Fireman Apprentice Brian W. Orsak. They testified that on the night of the fire they left an amusement center with Shaner around midnight and, after talking for about half an hour, walked back to the ship, a walk that took between 3 to 5 minutes. They arrived at the ship approximately 15 minutes prior to the fire being started. For about 3 minutes, they lost track of Shaner who had left to obtain a soda from the soda machines. It was during this period of time that the fire was probably started.

## DISCUSSION

■ The first question we must address is what standard of review should this Court apply to appellant's case. Here there apparently is no dispute as appellant's counsel and government counsel agree that, if there was an error of Constitutional dimension, reversal is required if the error was not harmless beyond a reasonable doubt. *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). Before our Court the Government conceded that the error was of Constitutional dimension and that the court below used the wrong standard in its review by treating it as nonconstitutional error.

The next question we must address is whether the judge committed error and, if so, whether that error was of Constitutional dimension. The defense theory of the case was that Shaner, not appellant, started the fire aboard the USS RALEIGH. Defense counsel sought to put this theory before the members by evidence that Shaner had the opportunity, knowledge, and motive to commit the offense. Coupled with the psychiatric evidence of appellant's tendency to acquiesce and accept blame in a stressful situation, the defense hoped to raise a reasonable doubt as to appellant's guilt in the minds of the members. Appellant claims that the judge committed error by cutting him off from introducing logically and legally relevant evidence resulting in a fundamentally unfair trial.

Evidence is logically relevant if it has "any tendency to make the existence of any fact ... more probable or less probable than it would be without the evidence." Mil.R.Evid. 401, Manual for Courts–Martial, United States, 1984. But more is required before evidence is admissible. It must also be legally relevant pursuant to Mil.R.Evid. 403. The evidence the defense sought to admit was as follows: (1) statements made by Shaner to Special Agent Fletcher tending to show that Shaner had knowledge of how the fire started; (2) introduction of habit evidence to establish that Shaner frequented and was fa-

miliar with the area where the fire started; and (3) statements made by Shaner to Maronde tending to demonstrate Shaner's animosity toward his commanding officer and the USS RALEIGH. We need not decide whether these statements by Shaner were within the scope of direct examination and admissible as non-hearsay or as an exception to the hearsay rule. We also need not address the habit evidence that the defense sought to introduce.

Shaner was called as a defense witness and denied the statements he made to Maronde and any knowledge concerning the fire pattern. Additionally he denounced animosity towards the Navy, his Commander, or the USS RALEIGH. The Government has rightly conceded that this evidence was both legally and logically relevant. The defense was persistent throughout the trial concerning its theory that it was Shaner who set fire to the ship. When Shaner was called by the defense, it was not a sham to introduce his statement, *United States v. Holmes*, 39 MJ 176 (CMA 1994); *United States v. Pollard*, 38 MJ 41 (CMA 1993), but rather an effort to establish that he was a suspect, had knowledge of where the fire started, frequented the area, had a motive to start the fire, and an opportunity to start the fire. All of these factors were critical to the defense theory of the case.

■ This Court has recognized the defendant's right of access to witnesses and evidence. *See United States v. Simmons*, 38 MJ 376 (CMA 1993). But access alone is not enough. The defendant has the right to present legally and logically relevant evidence at trial. *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985); *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); *United States v. Kelly*, 39 MJ 235, 237 (CMA 1994) ("Unlike other jurisdictions, the military criminal justice system has not limited *Ake* to psychiatric assistance ... or to capital cases."). *Cf. United States v. Burks*, 36 MJ 447 (CMA) (no right to admission of anonymous letter confessing to crime), *cert. denied*, —— U.S. ——, 114 S.Ct. 187, 126 L.Ed.2d 146 (1993); *United States v. Hayes*, 36 MJ 361 (CMA 1993) (evidence that children tested positive for sexually transmitted disease not relevant when there is no connection between dates of testing and dates of offenses). While the Constitutional right to present defense evidence is a "fundamental" right, *Chambers v. Mississippi, supra*, it is not absolute and may yield to policy considerations such as the interest in the orderly conduct at trials. *Taylor v. Illinois*, 484 U.S. 400, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988).

■ We agree with the court below that the judge erred when he ruled that the defense could not present legally and logically relevant evidence that someone else had the motive, knowledge, and opportunity to commit the arson. The right to present defense evidence tending to rebut an element of proof such as the identity of the perpetrator is a fundamental Constitutional right. *United States v. Valenzuela–Bernal*, 458 U.S. 858, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982); *Chambers v. Mississippi, supra; Webb v. Texas*, 409 U.S. 95, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972). Thus, this Court must next determine whether the error was harmless beyond a reasonable doubt.

In setting up a defense strategy for a case, counsel adopts a coherent theme and theory under which to present the case. The theme and theory usually take into consideration the strengths and weaknesses of the evidence that is both favorable and unfavorable to the accused. The defense theory of the case can be most helpful in explaining the weaknesses so as to be consistent with all or most of the evidence presented. In this case, the defense counsel was persistent in the defense theory that Shaner committed the arson. The defense also recognized that the most unfavorable and damaging evidence to appellant was his voluntary and detailed confession describing many of the particulars surrounding the cause of the fire. The defense attempted to negate or lessen the impact of appellant's confession by introducing psychiatric evidence of a plausible explanation for the confession. Dr. Parker presented evidence explaining appellant's reaction to stressful situations such as a series of NIS interrogations. The defense also pointed to

some inaccuracies in appellant's statement. Finally, the defense underscored the pressures of a third custodial interrogation in which common and proper law enforcement interrogation tactics were used. Attacking the reliability of the confession was the first prong of a two-pronged defense strategy. Even though the confession was detailed, voluntary, and properly before the finders of fact, the members were still free to determine the reliability of that confession.

Although the court below gave "great weight" to appellant's confession, we note that the court members deliberated for almost 6 hours in spite of having appellant's confession before them.

The second prong was to present plausible evidence that another individual, Shaner, had the motive, knowledge, and opportunity to commit the crime. Depending upon the weight the members might attach to appellant's second prong, the more viable his first prong of attacking the reliability of the confession becomes. This case really boils down to a question of credibility with appellant's fate intertwined with that of Shaner's. Yet the defense was thwarted in its attempts to put before the finders of fact legally and logically relevant evidence that someone other than appellant had knowledge of the fire pattern, had a motive to start the fire, and had the time and opportunity to ignite the fire. Under the facts of this case we cannot say that this Constitutional error was harmless beyond a reasonable doubt.

The decision of the United States Navy–Marine Corps Court of Military Review is reversed. The findings of guilty and the sentence are set aside. The record of trial is returned to the Judge Advocate General of the Navy. A rehearing may be ordered.

Chief Judge SULLIVAN and Judges COX, GIERKE, and WISS concur.