*This opinion is subject to revision before publication.*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES
_____

## UNITED STATES
Appellee

**v.**

## Edmond A. MAEBANE III,
### Hospital Corpsman Second Class Petty Officer
United States Navy, Appellant

**No. 24-0196**
Crim. App. No. 202200228

Argued March 18, 2025—Decided September 18, 2025

Military Judge: Stephen F. Keane

For Appellant: *Lieutenant Zoe R. Danielczyk*, JAGC, USN (argued); *Lieutenant Colonel Matthew E. Neely*, USMC (on brief).

For Appellee: *Lieutenant K. Matthew Parker*, JAGC, USN (argued); *Colonel Iain D. Pedden*, USMC, *Lieutenant Commander James P. Wu Zhu*, JAGC, USN, *Major Candace G. White,* USMC, and *Brian K. Keller*, Esq. (on brief).

Judge SPARKS delivered the opinion of the Court, in which Chief Judge OHLSON and Judge JOHNSON joined. Judge MAGGS filed a dissenting opinion, in which Judge HARDY joined.

_____

Judge SPARKS delivered the opinion of the Court.

A panel of officers and enlisted members at a general court-martial convicted Appellant, contrary to his pleas, of one specification of reckless endangerment and one specification of involuntary manslaughter, in violation of Articles 114 and 119, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 914, 919 (2018). The United States Navy-Marine Corps Court of Criminal Appeals (NMCCA) affirmed the findings and sentence. *United States v. Maebane*, No. NMCCA 202200228, 2024 CCA LEXIS 171, at *34-35, 2024 WL 1954294, at *12-13 (N-M. Ct. Crim. App. May 3, 2024) (unpublished). The granted issue requires us to decide whether an accused has "a Sixth Amendment right to present evidence of a recorded third party's confession to the crime for which the accused is on trial." *United States v. Maebane*, 85 M.J. 151 (C.A.A.F. 2024) (order granting review). We conclude that under the facts of this case, the military judge violated Appellant's constitutional right to present the evidence, and the military judge's exclusion of such evidence was prejudicial. Accordingly, we set aside the decision of the NMCCA.

## I. Background

On the evening of August 16, 2019, Appellant hosted a gathering at his residence. In attendance were Hospital Corpsman Third Class Petty Officer [HM3] Whiskey, Hospital Corpsman Second Class Petty Officer [HM2] Hotel, HM2 Wilson, Hospital Corpsman First Class Petty Officer [HM1] Davis, Appellant, and the victim, [HM3] Delta.

After arriving at Appellant's home between approximately 6:30 and 7:30 p.m., the group cooked food, listened to music, smoked cigars, and consumed varying quantities of alcohol. At some point in the evening, Appellant showed HM2 Wilson his new Springfield 9mm pistol. According to HM2 Wilson, Appellant took the pistol from a nearby coffee table, "cleared [the pistol], so removed the magazine, cleared [the] round that was in the chamber. And then, [Appellant] handed [HM2 Wilson] the pistol."

Appellant subsequently placed the magazine and cleared round onto the nearby television stand.[1] According to HM2 Wilson, he then handed the pistol back to Appellant, who passed the gun to the others at the party. However, HM2 Hotel claimed that no one other than HM2 Wilson and Appellant handled a firearm that night.

Over the course of the evening, Appellant brought out two additional firearms, a Springfield 1911 .45 pistol and a lever action rifle. As the weapons were passed around, there were instances where the sailors "dry fired" the weapons (i.e., pulling their triggers while they were unloaded). Appellant and HM3 Whiskey were seen dry firing the Springfield 9mm while pointing it at the victim.

Eventually, the weapons were put away. The lever action rifle was put behind a recliner, the 1911 .45 was placed between a wall and couch, and the Springfield 9mm was set down under a coffee table. Later, as the group played a drinking game, HM2 Wilson noticed the 9mm magazine and spare round were still on the television stand. After asking HM2 Davis to pass him the magazine and spare round, HM2 Wilson removed each round from the magazine, counted them, reloaded the magazine, and then placed both the magazine and spare round onto a windowsill near him. He did so to prevent someone from loading a round into the Springfield 9mm by accident. Eventually, Appellant asked HM2 Wilson for the rounds and magazine back, stating he intended to put the Springfield 9mm away upstairs. But rather than bringing the rounds and magazine upstairs, Appellant "loaded the magazine into the pistol, charged a round into [the] chamber [by racking the slide], took the magazine out, put the spare round into the magazine" and then placed "the magazine back [into] the pistol." Appellant then put the Springfield 9mm in his waistband.

---

[1] The NMCCA's finding that HM2 Wilson took this action is clearly erroneous. *Maebane*, 2024 CCA LEXIS 171, at *3, 2024 WL 1954294, at *1.

Sometime thereafter, Appellant began wrestling with the victim. At this point, Appellant gave HM2 Wilson both the handguns. Having seen Appellant load the Springfield 9mm, HM2 Wilson placed the weapon under his thighs while Appellant and the victim wrestled. When the wrestling ended, Appellant asked for the Springfield 9mm back and again put the gun in his waistband.

Around midnight, Appellant and the victim began wrestling again. Subsequent testimony stated that Appellant pulled the Springfield 9mm from his waistband and placed it against the victim's head. The victim then "grabbed [the pistol] by the front of the muzzle and, sort of, pulled it in, like, a couple inches to his forehead." Shortly before this, HM2 Hotel had witnessed Appellant pull the slide, causing a round to enter the firing chamber. Seeing the pistol against the victim's head and believing Appellant, in pulling the slide with a loaded magazine in the weapon, had just put another round in the chamber, HM2 Hotel "tried to jump up and tell him to stop." HM2 Hotel testified that he was too late, and that Appellant pulled the trigger, killing the victim.

HM2 Wilson called 911. Agents from both the Army Criminal Investigative Division (CID) and the Naval Criminal Investigative Service (NCIS) responded to the call. Appellant told CID that the victim had "reached down into the sofa, pulled out a pistol and put it to his head and shot himself." Around 1:45 a.m. on August 17, 2019, HM3 Whiskey, HM2 Hotel, HM2 Wilson, HM1 Davis, and Appellant were then interviewed. HM3 Whiskey, HM2 Hotel, HM2 Wilson, and HM1 Davis recalled hearing a shot but denied seeing it fired. Appellant did not provide a statement.

NCIS agents initially came to the conclusion that the trajectory of the fatal shot came from where HM3 Whiskey was sitting. Early that morning, Special Agent [SA] Tango read HM3 Whiskey his rights under Article 31(b), UCMJ, 10 U.S.C. § 831(b) (2018), and accused him of shooting the victim. In response, HM3 Whiskey stated, "If I shot him, I don't remember," and went on to note he "never put the

magazine inside the gun." In response, SA Tango told HM3 Whiskey that she believed the victim's death may have been an accident, and that HM3 Whiskey had a bright future ahead of him. HM3 Whiskey replied, "I am scared . . . . If I knew I did it, I would say it." Special Agent Tango next told HM3 Whiskey that she believed the bullet that killed the victim was fired from where he was seated. After being confronted with this allegation, HM3 Whiskey continued to assert he did not remember what happened.

HM3 Whiskey then told SA Tango, "[b]ut if like the evidence . . . you can't argue evidence if the evidence and stuff come back and say I [shot the victim] it was an accident." About a minute later, he stated "I don't know what happened . . . I literally do not know what happened . . . . Maybe I just blocked it out . . . . I don't know what happened." SA Tango elicited from HM3 Whiskey that he had an older sister and told him that the victim had a little sister who looked up to him. HM3 Whiskey repeated, "If I knew that it was me that did it, I would say that it was me that did it."

SA Tango again told HM3 Whiskey that the shot that killed the victim was fired from where he was seated. In response, HM3 Whiskey said, "If that's all the evidence [concerning the victim's death], then I guess when I pulled the trigger and it went off, I guess my mind just shut it off, shut it out. Because I never intended for that to happen. It was just a stupid fucking accident." After this statement, SA Tango left the room. When she left, HM3 Whiskey immediately whispered to himself, "It wasn't me."

When SA Tango returned after ten minutes, she continued her questioning. HM3 Whiskey admitted to playing with the gun but told SA Tango he did not know how it became loaded. Then, he stated, "I guess, I guess, I did it. There's really no arguing it. It was a stupid fucking thing. It was a mistake. I didn't mean to do it. I fucking killed somebody."

After HM3 Whiskey confessed, SA Tango asked him a number of follow-up questions, including, "Did you pull the

trigger?" to which HM3 Whiskey responded, "I believe so." He then stated "I swear I put down my beer, looked at the TV and that's when the shot got off." In response to further pressing, HM3 Whiskey told SA Tango, "I guess after I took a drink—beer, I picked up the gun either from the floor or couch next to me and then I shot him." He then stated, "I guess that makes sense if I did have the gun in my hand."

HM3 Whiskey went on to describe the shooting in further detail after further questioning, stating, "[w]hen I put down my beer, I picked up the gun, pointed it at him, expecting it to dry fire again, boom, hands went up because it scared the fuck out of me and that's when I saw him slump. That's when I was like holy shit." At SA Tango's urging, HM3 Whiskey wrote a letter to the victim's parents, stating, "Your son was a good man and I took him from you and this world out of pure stupidity." HM3 Whiskey was placed into pretrial confinement the following day.

While HM3 Whiskey was in pretrial confinement, HM1 Davis voluntarily returned to NCIS and told investigators that he saw Appellant holding a gun immediately after hearing the gunshot. HM1 Davis described to investigators that he believed the weapon Appellant was holding was the Springfield 1911 .45 pistol. He further said that, from his perspective, only Appellant could have fired the shot that killed the victim. He did mention, however, that it was possible HM3 Whiskey could have fired the shot if the evidence showed the entrance wound was in the back of the victim's head. An autopsy revealed that the bullet entered the victim's forehead and exited the wound on the back of the victim's head.

Approximately twelve days after his interview with SA Tango, HM3 Whiskey recanted his confession. Among the reasons he offered for falsely confessing were "he was scared," he had received only "an hour of sleep," he "wanted the questions to stop," and SA Tango's mention of the victim's family "made him feel terrible." Over the course of the investigation, HM2 Hotel and HM2 Wilson were again interviewed by NCIS and stated that Appellant fired the

shot that killed the victim. Each recalled Appellant holding a black pistol that looked like the Springfield 9mm immediately after the shot was fired. Forensic testing confirmed that the bullet that killed the victim was fired from the Springfield 9mm pistol.

When questioned by NCIS about where people were located when the shot was fired, HM2 Hotel, HM2 Wilson, and HM1 Davis were in agreement. Each described Appellant as being on the victim's immediate right, while HM3 Whiskey was sitting to the victim's left. Ultimately, the forensic report of the shooting indicated the bullet that killed the victim was lodged in the wall immediately to the victim's left. Appellant was then charged with reckless endangerment and involuntary manslaughter.

Prior to trial, Appellant moved for a preliminary ruling to admit the recording of HM3 Whiskey's interview with SA Tango and his handwritten note to the victim's parents under Military Rule of Evidence (M.R.E.) 807, the residual exception to the rule against hearsay. Appellant's motion also relied on the Supreme Court's decision in *Holmes v. South Carolina*, 547 U.S. 319 (2006), and this Court's decision in *United States v. Woolheater*, 40 M.J. 170 (C.M.A. 1994), in arguing that excluding this evidence would violate his Sixth Amendment right to present a complete defense. In his ruling on the motion, the military judge determined that the evidence was inadmissible under M.R.E. 807 because the statements were untrustworthy. This was because the military judge determined that: (a) there was no corroborating evidence, or more precisely that it "cannot be corroborated" by the record; (b) HM3 Whiskey only confessed after suggestive questioning in the second interview; (c) HM3 Whiskey's mental state was not reliable; and (d) it was a false confession. The military judge ruled the handwritten note inadmissible under M.R.E. 807 for the same reasons. He ruled in the alternative that admitting HM3 Whiskey's statement would not serve the interests of justice and "would serve to mislead the members and waste time in violation of [M.R.E.] 403." The military judge's ruling never

addressed Appellant's reliance on *Holmes* and *Woolheater*, or Appellant's contention that admission of HM3 Whiskey's confession and letter were necessary under his constitutional right to present a complete defense. Further, he ignored circumstantial evidence that HM3 Whiskey was in fact the shooter, such as HM3 Whiskey pointing the 9mm pistol at the victim and pulling the trigger, HM3 Whiskey's text message to a friend stating, "Yo being slight drunk around [the victim] is hell" and the history of personal conflict between HM3 Whiskey and the victim.

Ultimately, the military judge held that the defense could "impeach [HM3 Whiskey] with his confession on cross-examination but [could] not offer the confession for its truth." At trial, under direct examination by the Government, HM3 Whiskey testified that he had falsely confessed to the shooting. He further testified that, while he was present when the victim was killed, he did not see the shooting occur. During cross-examination, trial defense counsel elicited from HM3 Whiskey, in detail, all relevant facts regarding his confession to SA Tango.

The prosecution entered into evidence a Trace Evidence Report which concluded that the clothing worn by HM3 Hotel, HM3 Whiskey, and Appellant was "in contact with a discharged firearm," "in close proximity to a discharging firearm," or "otherwise in an environment of gunshot residue." No gunshot residue was found on HM2 Wilson or HM1 Davis. Prior to closing arguments, the military judge provided the members with instructions regarding the proper consideration of prior inconsistent statements.

Specifically, the military judge instructed the panel that:

> You have heard evidence that before this trial, certain witnesses may have made statements that may be inconsistent with their—you can cross out his or her—their testimony here in court.
>
> If you believe that an inconsistent statement or statements was or were made, you may consider the inconsistency in deciding whether to believe that witness's in-court testimony. You may not

consider the earlier statements as evidence of the truth of the matters contained in the prior statements. In other words, you may only use it or them as one way of evaluating the witnesses testimony here in court. You cannot use it or them as proof of anything else.

For example, if a witness testifies in court that the traffic light was green and you heard evidence that the witness made a prior statement that the traffic light was red, you may consider that prior statement in evaluating the truth of the witness's in court statement—in court testimony. You may not, however, use the prior statement as proof that the light was red.

## II. Discussion

We review a military judge's ruling on the admissibility of evidence for "an abuse of discretion." *United States v. McElhaney*, 54 M.J. 120, 129 (C.A.A.F. 2000). Military judges abuse their discretion when: (1) their findings of fact "are not supported by the evidence of record;" (2) they fail "to consider important facts;" (3) they use "incorrect legal principles;" or (4) their application of correct legal principles to the facts is "clearly unreasonable." *United States v. Commisso*, 76 M.J. 315, 321 (C.A.A.F. 2017). When the ruling involves mixed questions of fact and law, findings of fact are reviewed for clear error and conclusions of law are reviewed de novo. *See United States v. Kelley*, 45 M.J. 275, 279-81 (C.A.A.F. 1996). Courts are highly deferential when military judges articulate their analysis on the record. *See United States v. Manns*, 54 M.J. 164, 166 (C.A.A.F. 2000).

"[T]he Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.' " *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (citations omitted) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)). The exclusion of trustworthy exculpatory evidence may violate an accused's constitutional right to present a defense. *See Chambers v. Mississippi*, 410 U.S. 284, 294-95, 302 (1973); *Holmes*, 547 U.S. at 324-25, 331. However, this only occurs when an evidentiary rule by its

very terms, or a military judge's application of the rule, "infring[es] upon a weighty interest of the accused and [is] arbitrary or disproportionate to the purposes [the rule is] designed to serve." *United States v. Beauge*, 82 M.J. 157, 167 (C.A.A.F. 2022) (quoting *Holmes*, 547 U.S. at 324-25). To meet this standard, an appellant cannot merely proffer that the military judge excluded evidence relevant to a defense. Instead, the excluded evidence must have "significantly undermined fundamental elements of the [appellant's] defense." *United States v. Scheffer*, 523 U.S. 303, 315 (1998).

### A. Exclusion of the third-party confession infringed upon Appellant's weighty interest

Here, the military judge's exclusion of HM3 Whiskey's confession and letter infringed upon Appellant's weighty interest. A primary focus of Appellant's defense at trial was that he did not in fact shoot the victim. HM3 Whiskey's confession and written letter were the primary pieces of evidence for Appellant's defense. By only admitting this evidence for impeachment purposes, the military judge infringed upon Appellant's weighty interest in the presentation of his defense.

### B. The military judge's application of M.R.E. 807 was arbitrary

In his M.R.E. 807 analysis, the military judge relied upon *United States v. Donaldson*, 58 M.J. 477 (C.A.A.F. 2003), in evaluating the reliability of HM3 Whiskey's confession. In *Donaldson*, this Court instructed lower courts to consider several "indicia of reliability" in determining whether a hearsay statement is admissible under the residual hearsay exception. *Id*. at 488. These indicia of reliability are as follows: "(1) the mental state of the declarant; (2) the spontaneity of the statement; (3) the use of suggestive questioning; and (4) whether the statement can be corroborated." *Id*.

Appellant argues that under the circumstances of this case, the military judge's reliance on *Donaldson* was inapt. First, *Donaldson* interpreted the previous version of

M.R.E. 807, which provides for the admission of hearsay not otherwise admissible under a hearsay exception in M.R.E. 803 or 804 if "the statement has equivalent circumstantial guarantees of trustworthiness" as the other hearsay exceptions. M.R.E. 807(a)(1) (2000 ed.). As amended, M.R.E. 807 provides, in relevant part: that hearsay not otherwise admissible under one of the hearsay exceptions in M.R.E. 803 or 804 is admissible if "the statement is supported by sufficient guarantees of trustworthiness—after considering the totality of the circumstances under which it is made and evidence, if any, corroborating the statement." M.R.E. 807(a)(1) (2024 ed.). But "[e]vidence admitted under [M.R.E.] 807 is not required to be completely free from all questions." *United States v. Zamora*, 80 M.J. 614, 629 (N-M. Ct. Crim. App. 2020); *see also Schering Corp. v. Pfizer, Inc.*, 189 F.3d 218, 233 (2d Cir. 1999) (observing that a hearsay statement "need not be free" of all "risk to be admitted" under the residual hearsay exception). To this end, "third-party culpability evidence, to be admissible, need not be sufficient to sustain a guilty verdict against the third party." *Bradford v. Paramo*, 100 F.4th 1088, 1098 (9th Cir. 2024). "It need only have the potential, considered along with other evidence in the record, to raise a reasonable doubt as to the guilt of the defendant." *Id.*; *see also* Fed. R. Evid. 807 advisory committee's note to 2019 amendment ("the court should not consider the credibility of any witness who relates the declarant's hearsay statement in court. . . . To base admission or exclusion of a hearsay statement on the witness's credibility would usurp the jury's role of determining the credibility of testifying witnesses"). Second, *Donaldson* is distinguishable on its facts. *Donaldson* involved a three-year-old child sexual abuse victim, and the Court derived its "indicia of reliability" from a series of cases involving child victims of sexual abuse. 58 M.J. at 488 (first citing *United States v. Grant*, 42 M.J. 340, 343-44 (C.A.A.F. 1995) (seven-year-old); then citing *Kelley*, 45 M.J. at 281 (six-year-old); and then citing *United States v. Cox*, 45 M.J. 153, 157 (C.A.A.F. 1996) (six-year-old)). The "totality of circumstances"

includes additional considerations when evaluating the admissibility of an adult's statements to law enforcement. This is particularly true where the new M.R.E. 807 expressly requires military judges to consider other corroborating evidence, separate and apart from the circumstances under which the statement was made. Thus, it is not clear that *Donaldson* and its interpretation of the prior version of M.R.E. 807 was appropriate for the military judge to apply in the first instance. However, even if it was appropriate, the military judge still misapplied *Donaldson*.

### 1. HM3 Whiskey's confession was trustworthy

In determining the confession was not trustworthy, he pointed to four points: (1) the forensic evidence directly contradicted HM3 Whiskey's confession; (2) SA Tango used suggestive questioning akin to coaching; (3) the circumstances surrounding the confession were indicative of unreliability; and (4) HM3 Whiskey's confession was false.

In *Chambers*, the Supreme Court found that a third party's confession had assurances of trustworthiness because each statement was made spontaneously to a close acquaintance, each statement was corroborated by other evidence in the case, each statement was in a real sense against the third party's interest, and the third party was present and available for cross-examination. 410 U.S. at 300-01. Here, HM3 Whiskey's confession had similar assurances of trustworthiness: (1) his confession was made in close temporal proximity to the crime—the day after the shooting; (2) the confession was corroborated by other evidence such as his pointing the pistol and dry firing at the victim, the gunshot residue found on HM3 Whiskey when tested by law enforcement, and the letter he drafted to the family after confessing; (3) the confession was clearly against his penal interest; and (4) HM3 Whiskey was subject to cross-examination at Appellant's trial. All this points toward HM3 Whiskey's testimony having a strong indicia of reliability. He confessed shortly after the killing, "[two] times, in [two] forms, . . . . with no apparent ulterior

motive, and clearly against his penal interest." *Gable v. Williams*, 49 F.4th 1315, 1330 (9th Cir. 2022). The military judge erred by failing to consider these indicia of reliability in ruling on the admissibility of the confession.

Further, HM3 Whiskey gave his confession during a law enforcement interrogation, and, because of this, there is a question of whether it was voluntary. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 225-28 (1973) (explaining an involuntary confession occurs where an accused's "will has been overborne" by law enforcement and is not admissible at trial); *see also United States v. Freeman*, 65 M.J. 451, 453 (C.A.A.F. 2008) ("The voluntariness of a confession is a question of law. . . ."). The military judge found, and there is no reason to conclude otherwise, "[n]either of HM3 [Whiskey's] statements to NCIS were the product of NCIS coercion, unlawful influence, or unlawful inducement." Because HM3 Whiskey's confession was voluntary as a matter of law, the "credibility and weight" of this confession should have been a "question [of fact] for the [members]." 23A C.J.S. Criminal Procedure and Rights of Accused § 1791 (updated May 2024); *see also United States v. Hall*, 93 F.3d 1337, 1344 (7th Cir. 1996) (writing that once a judge decided the defendant's confession was voluntary "it was . . . within the jury's province to assess the truthfulness and accuracy of the confession").

Here, the military judge infringed on the role of the fact finders by excluding the confession based on his evaluation of its truthfulness. This conclusion is contrary to "[the] fundamental premise of our criminal trial system . . . . that 'the jury is the lie detector.'" *Scheffer*, 523 U.S. at 313 (quoting *United States v. Barnard*, 490 F.2d 907, 912 (9th Cir. 1973)); *see also id.* (writing that the determination of the weight and credibility of witness testimony "has long been held" to belong to the jury).

The military judge incorrectly reached this conclusion by relying solely on the strength of the Government's case. The military judge's ruling made explicit reference to the fact that the "forensic evidence in this case directly contradicts HM3 [Whiskey's] confession." Outside of the

strength of the Government's forensic evidence, the military judge largely failed to address the connection between HM3 Whiskey and the charged crime. The military judge considered SA Tango's suggestive questioning and HM3 Whiskey's mental state, but these facts do not directly address HM3 Whiskey's connection to the charged conduct. *See Holmes*, 547 U.S. at 330 (stating that "[j]ust because the prosecution's evidence, if credited, would provide strong support for a guilty verdict, it does not follow that evidence of third-party guilt has only a weak logical connection to the central issues in the case"). In addition, the military judge explicitly stated that he was not considering the evidence proffered by Appellant that connected HM3 Whiskey to the crime because he found "HM3 [Whiskey's] recanted confession is the only evidence [Appellant] . . . . pointed to indicating HM3 [Whiskey] was the shooter." Under *Holmes*, evidence of third-party guilt may not be excluded merely because the prosecution's evidence is robust. *See* 547 U.S. at 329. The Government argues that *Holmes* is inapplicable because the military judge did not "solely consider [the] inculpatory forensic evidence and instead reviewed the totality of circumstances that made [HM3 Whiskey's] statements not sufficiently trustworthy." However, even the NMCCA acknowledged that the "clear implication" from the ruling is that the military judge "did not consider any of the purportedly corroborative evidence cited by the Defense." *Maebane*, 2024 CCA LEXIS 171, at *19, 2024 WL 1954294, at *8. Thus, the military judge only considered the strength of the Government's evidence—in violation of *Holmes*.

Without any further justification, contrary to the military judge's decision, this Court is left with a confession that bears *Chambers's* assurances of trustworthiness. Further, this Court has considered the question of the Sixth Amendment right to a complete defense and third-party culpability evidence before. In *Woolheater*, this Court held that the military judge erred by excluding "legally and logically relevant evidence that someone else had the motive, knowledge, and opportunity to commit" the crime.

14

40 M.J. at 173. This Court described the military judge's efforts there as "thwart[ing]" the defense theory. *Id.* at 174. The Court held the total preclusion of the defense theory violated appellant's constitutional right to present a defense. *Id.* Here, the military judge similarly thwarted the defense's theory by only allowing the evidence to come in as a prior inconsistent statement and instructing the panel that the previous confession should not be considered substantively. By only allowing the defense to offer HM3 Whiskey's confession for impeachment, Appellant could not use the confession to support the circumstantial evidence of HM3 Whiskey's "motive, knowledge, and opportunity."

This failure to consider *Chambers* and *Holmes* led to the exclusion of Appellant's only direct evidence that a third party committed the charged conduct. Because of the importance of this evidence to Appellant's defense, its exclusion infringed upon his weighty interest in the presentation of his defense and the clearest basis for members to find a reasonable doubt. "Facts give meaning to other facts, and certain pieces of evidence become significant only in the aggregate upon the proffer of other evidence." *State v. Wilson*, 864 N.W.2d 52, 65 (Wis. 2015). With the confession, other evidence such as the gun residue and the dry firing becomes more potent. By rejecting the confession for its truth, the military judge inserted himself into the role of factfinder and changed how the members may have viewed that other evidence. Thus, the military judge infringed on Appellant's weighty interest, and, as such, erred.

This is not to say that this Court sanctions all third-party culpability evidence, regardless of trustworthiness. In *Burks*, this Court considered the admissibility of an anonymous letter from a murder victim's purported lover, "Michael." *United States v. Burks*, 36 M.J. 447, 449 (C.M.A. 1993). The letter explained how the victim had died because the victim had "become entwined" with a "homosexual cult." *Id.* This Court rejected the appellant's arguments on both the residual hearsay and constitutional grounds, "because certain evidence—the fundamental

trustworthiness of which is wholly unestablished by the defendant—is excluded from the trial." *Id.* at 451 (citing *United States v. Hinkson*, 632 F.2d 382, 386 (4th Cir. 1980)).

A comparison between *Burks* and *Woolheater* places Appellant's case in the realm of a reasonable version of events, supported by independent indicia of trustworthiness. Similar to *Woolheater*, HM3 Whiskey had: motive to harm the victim, knowledge of the shooting, and the opportunity to carry it out. Therefore, HM3 Whiskey's third-party confession should be subject to the factfinder's determination as to weight. *Burks*, on the other hand, did not meet any indicia of trustworthiness as the defense's theory as well as the supporting evidence were highly suspect.

### 2. SA Tango's interrogation of HM3 Whiskey was appropriate

The military judge's finding on SA Tango's interrogation of HM3 Whiskey is contradictory. In his *Donaldson* analysis, the military judge says SA Tango employed "suggestive questioning akin to coaching"; however, he also stated that "[n]either of HM3 [Whiskey's] statements to NCIS were the product of NCIS coercion, unlawful influence, or unlawful inducements." This statement suggests the suggestive questioning would affect HM3 Whiskey less because he is an adult.[2] *See United States v. Wilson*, No. NMCCA 201800022, 2019 CCA LEXIS 276, at *52-53, 2019 WL 2745384, at *21 (N-M. Ct. Crim. App. July 1, 2019) (unpublished) ("All of the experts acknowledged that children are susceptible to suggestion and that they are capable of believing events happened that did not happen."). As a result, the military judge's decision to attribute great significance to SA Tango's use of suggestive questioning is unclear, especially when such tactics are regularly—and permissibly—used by law enforcement. *See, e.g., United States v. Monroe*, 264

---

[2] HM3 Whiskey was twenty-one years old when the charged offense occurred.

F. Supp. 3d 376, 391 (D.R.I. 2017). Additionally, interrogating officers can make false representations concerning a crime or investigation without rendering an ensuing confession coerced or unreliable. *See Frazier v. Cupp*, 394 U.S. 731, 739 (1969). There is nothing extraordinary about SA Tango's questioning and no special characteristic of HM3 Whiskey that renders his confession suspect. Thus, the truthfulness of the confession should have been left to the members to evaluate. *Hall*, 93 F.3d at 1345.

Finally, the military judge made inconsistent findings as to HM3 Whiskey's mental state when he confessed. On the one hand, the military judge found HM3 Whiskey's confession and letter were unreliable because he was "unstable from grief, fear, and lack of sleep." However, the military judge also found that HM3 Whiskey understood NCIS's questions and had the wherewithal to ask for clarification on one occasion when he did not understand their cleansing warning. At a minimum, this inconsistency casts doubt on the military judge's findings.

### C. The military judge's application of M.R.E. 403 was arbitrary

"In the alternative," the military judge found that "admitting HM3 [Whiskey's] confession under these troubling circumstances . . . would serve to mislead the members and waste time in violation of M.R.E. 403." Because the military judge largely failed to articulate his reasoning, his M.R.E. 403 ruling is entitled to less deference. *See Manns*, 54 M.J. at 166 ("This Court gives military judges less deference if they fail to articulate their balancing analysis on the record, and no deference if they fail to conduct the Rule 403 balancing."). The military judge erred in his M.R.E. 403 analysis because HM3 Whiskey's confession was probative and did not serve to mislead the members.

First, in determining the probative value of third-party culpability evidence, courts have considered the "strength of the link between the exculpatory evidence and the case

at hand." *United States v. Moore*, 590 F. Supp. 3d 277, 284 (D.D.C. 2022). Here, there is a strong link, as HM3 Whiskey was present at the crime scene and confessed. Second, the evidence did not pose a risk of "sidetrack[ing] the jury into consideration of factual disputes only tangentially related" to the case. *United States v. McVeigh*, 153 F.3d 1166, 1191 (10th Cir. 1998). The Government argues that Appellant killed the victim, whereas Appellant's defense was based on creating a reasonable doubt someone else killed the victim. Thus, HM3 Whiskey's confession possessed a strong logical connection to the case's central issue because it provided a basis for members to find Appellant did not kill the victim. *See Bradford*, 100 F.4th at 1100. Third, the proposed evidence was not excessively "complex or time-consuming." *United States v. Jordan*, 485 F.3d 1214, 1221 (10th Cir. 2007). HM3 Whiskey's interrogation did not involve an esoteric or complex topic. Instead, it concerned the circumstances under which the charged conduct occurred, which directly implicates the members' role as factfinders.

The Government contends the military judge did not err because "Appellant was able to present equally useful evidence by cross-examining [HM3 Whiskey] on his admissions during the second interview." So, it argues HM3 Whiskey's confession and letter were unnecessary because they were cumulative of other evidence. However, after the cross-examination, the military judge later instructed members to only consider prior inconsistent statements such as HM3 Whiskey's confession as impeachment bearing on HM3 Whiskey's credibility, and not as evidence for the truth of the matter asserted. Therefore, the military judge stripped the confession of its probative value. And this Court "presume[s] that members follow a military judge's instructions," so, absent some unapparent circumstance, this Court presumes the members did not consider the confession for an impermissible purpose. *United States v. Taylor*, 53 M.J. 195, 198 (C.A.A.F. 2000). Without HM3 Whiskey's confessions and letter, there was no *direct* evidence

showing HM3 Whiskey killed the victim. Thus, the confession and letter are not cumulative.

Given the above, the military judge's ruling "infring[ed] upon a weighty interest of [Appellant]." *Holmes*, 547 U.S. at 324. His M.R.E 807 and 403 determinations were arbitrary because they excluded reliable and highly probative evidence.

### D. Appellant was prejudiced by this inability to put on a full defense

Because the military judge's ruling violated Appellant's constitutional right to present a complete defense, the Government "must show that the error was harmless beyond a reasonable doubt to obviate a finding of prejudice." *United States v. Tovarchavez*, 78 M.J. 458, 462 (C.A.A.F. 2019). The Government contends any error was harmless because the "confession and apology were introduced for impeachment and used to argue [HM3 Whiskey] was the shooter." Thus, the Government argues that excluded evidence was cumulative, and Appellant was still able to present his theory of third-party culpability. This is incorrect for three reasons.

First, third-party culpability evidence, if believed, renders "reasonable doubt" an "almost . . . forgone conclusion." *Bradford*, 100 F.4th at 1096. HM3 Whiskey's confession and letter, if believed, provide members with a basis to find reasonable doubt. Second, the confession and letter played a vital role in Appellant's defense. "As is usually the case with pieces of evidence, each item of information [Appellant] sought to introduce gave meaning and coherence to [HM3 Whiskey's] admission, put it in context, and explained it." *Lunbery v. Hornbreak*, 605 F.3d 754, 761 (9th Cir. 2010). By excluding HM3 Whiskey's letter and evidence, the military judge eliminated "the probative force of the whole chain" of evidence underlying Appellant's defense. *Id.* Moreover, by instructing the members that HM3 Whiskey's confession was only relevant to his credibility, the military judge tacitly undermined Appellant's defense by signaling to the jury that HM3

19

Whiskey's confession was not credible. Third, this Court "will reverse a conviction unless [it] find[s] that a constitutional error was not a factor in obtaining that conviction." *United States v. Kreutzer*, 61 M.J. 293, 298-99 (C.A.A.F. 2005). It is difficult to see how the exclusion of this evidence could not play a role in Appellant's conviction. Thus, we conclude the military judge's error was not harmless beyond a reasonable doubt.

### III. Conclusion

The judgment of the United States Navy-Marine Corps Court of Criminal Appeals is reversed. The findings and sentence are set aside. The record is returned to the Judge Advocate General of the Navy. A rehearing is authorized.

Judge MAGGS, with whom Judge HARDY joins, dissenting.

Hospital Corpsman Third Class (HM3) Delta was shot and killed at a gathering where several sailors were foolishly playing with firearms and drinking alcohol. Accused of firing the fatal bullet, Appellant was charged with involuntary manslaughter. At his trial by general court-martial, Appellant moved for admission into evidence of several statements that another sailor, HM3 Whiskey, had made out of court. In these statements, HM3 Whiskey confessed that he was the one who had shot HM3 Delta. The military judge, however, ruled that HM3 Whiskey's statements were inadmissible hearsay. The military judge rejected Appellant's argument that the statements should be admitted under the residual hearsay exception in Military Rule of Evidence (M.R.E.) 807(a) because the military judge was not convinced that the statements were "supported by sufficient guarantees of trustworthiness" as that exception requires.[1] The court-martial found Appellant guilty of the involuntary manslaughter offense. The United States Navy-Marine Corps Court of Criminal Appeals (NMCCA) affirmed. *United States v. Maebane*, No. NMCCA 202200228, 2024 CCA LEXIS 171, at *34, 2024 WL 1954294, at *13 (N-M. Ct. Crim. App. May 3, 2024) (unpublished).

---

[1] M.R.E. 1102(a) provides that "[a]mendments to the Federal Rules of Evidence—other than Articles III and V—will amend parallel provisions of the Military Rules of Evidence by operation of law 18 months after the effective date of such amendments, unless action to the contrary is taken by the President." On April 25, 2019, the Supreme Court informed Congress that it had ordered an amendment to Fed. R. Evid. 807 with an effective date of December 1, 2019. Letters from Chief Justice John G. Roberts to Nancy Pelosi, Speaker of the House of Representatives, and Michael R. Pence, President, United States Senate, https://www.supremecourt.gov/orders/courtorders/frev19_774d.pdf (last visited Sept. 11, 2025). Congress did not act to prevent the amendment from going into effect. Therefore, by operation of M.R.E. 1102, M.R.E. 807 was automatically amended to match Fed. R. Evid. 807 eighteen months later, on May 1, 2021. This amended version of M.R.E. 807 was in effect when Appellant was tried on June 8, 2022.

This Court granted review to decide the question: "Does an accused have a Sixth Amendment right to present evidence of a recorded third party's confession to the crime for which the accused is on trial." The Court answers this question in the affirmative and sets aside the finding that Appellant is guilty of involuntary manslaughter. I write separately because my assessment of the issue is different. Like the military judge and the judges of the NMCCA, I conclude that HM3 Whiskey's statements were inadmissible. They were hearsay, and they did not fit within the residual hearsay exception because the statements were not sufficiently trustworthy. And because the statements were not sufficiently trustworthy, I also conclude that the United States Constitution did not require their admission into evidence. I therefore respectfully dissent.

**I.**

The Military Rules of Evidence state that it is the military judge who "must decide any preliminary question about whether . . . evidence is admissible." M.R.E. 104(a) (2019 ed.). In making the decision, the military judge is not bound by the rules of evidence. *Id.* One preliminary question is whether a hearsay statement is admissible evidence. Hearsay, as defined in M.R.E. 801(c), is a "statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Here, HM3 Whiskey was the declarant, and he did not make the statements at issue while testifying at trial. Appellant offered these statements for the truth of the matter asserted, namely, that HM3 Whiskey was the person who fired the shot that killed HM3 Delta. Therefore, HM3 Whiskey's statements were hearsay.

The "rule against hearsay" in M.R.E. 802 provides that "[h]earsay is not admissible" unless some exception applies. Military Rules of Evidence 803 and 804 contain numerous specific exceptions under which hearsay may be admissible, but none applies here. Notably, the exception in M.R.E. 804(b)(3) for a "[s]tatement against interest" does not apply because one element of that exception is that the declarant be unavailable as a witness. Here, HM3 Whiskey

was available as a witness, he did testify at trial, and in his testimony, he expressly answered the question whether he shot HM3 Delta.

That leaves for consideration the issue of whether HM3 Whiskey's hearsay statements should have been admitted under the "residual exception" to the rule against hearsay under M.R.E. 807, the applicable version of which provides in relevant part:

> Rule 807. Residual Exception
>
> (a) *In General.* Under the following conditions, a hearsay statement is not excluded by the rule against hearsay even if the statement is not admissible under a hearsay exception in Rule 803 or 804:
>
> > (1) the statement is supported by sufficient guarantees of trustworthiness—after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement; and
> >
> > (2) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts.

The military judge, as previously noted, ruled that the residual exception did not apply because HM3 Whiskey's statements were not trustworthy. Under M.R.E. 104(a), this decision regarding the trustworthiness of the statements was for the military judge, not the members, to make because M.R.E. 807(a) makes the admissibility of the statements contingent on this determination.

This Court reviews a military judge's decision on the admissibility of evidence under the residual hearsay exception in M.R.E. 807 for abuse of discretion. *United States v. Czachorowski*, 66 M.J. 432, 434 (C.A.A.F. 2008). In the light of concerns addressed by the NMCCA and this Court, I will assume without deciding that the military judge abused his discretion by not considering certain facts and by impermissibly considering certain other facts.[2] A

---

[2] The NMCCA decided that the military judge abused his discretion when he concluded that the HM3 Whiskey's "confession cannot be corroborated." But as the NMCCA explained, the

military judge's evidentiary ruling, however, may be affirmed if any error in the military judge's reasoning was harmless because "the military judge reached the correct result, albeit for the wrong reason." *United States v. Robinson*, 58 M.J. 429, 433 (C.A.A.F. 2003). In this case, I agree with the military judge's conclusion that the hearsay statements were inadmissible.

M.R.E. 807(a)(1) restricts the residual exception only to hearsay statements that are "supported by sufficient guarantees of trustworthiness." In deciding whether these guarantees exist, the rule requires consideration of the "totality of circumstances" under which the declarant made the hearsay statement and "evidence, if any, corroborating the statement." I have considered the totality of the circumstances, with a special emphasis on the arguments that the parties make in their briefs.

In my assessment, the strongest facts in favor of admitting HM3 Whiskey's statements under the residual exception to the rule against hearsay in M.R.E. 807(a) are that HM3 Whiskey was present at the gathering, that he was playing with firearms, and that the statements he made went against his own interests. But in my opinion, neither these facts, nor any others in the record, are enough to convince me that HM3 Whiskey's statements are "supported by sufficient guarantees of trustworthiness—after

---

military judge should have considered the following corroborative evidence: (1) HM3 Whiskey's presence in the room where the shooting occurred; (2) HM3 Whiskey's earlier hostile statements toward HM3 Delta; (3) HM3 Whiskey's dry firing of the weapon at the HM3 Delta; (4) the location of a dinner plate suggestive of HM3 Whiskey's position in the room; and (5) forensic evidence showing HM3 Whiskey was close to the firing of a weapon. *Maebane,* 2024 CCA LEXIS 171, at *19-20, 2024 WL 1954294, at *8.

And in this appeal, this Court decides that the military judge abused his discretion when he concluded that HM3 Whiskey's confession was not trustworthy in part because the military judge considered forensic evidence that contradicted it. The Court reasons that Supreme Court precedent precludes a trial judge from assessing the trustworthiness of the evidence based on the strength of the government's evidence.

considering the totality of circumstances." I reach this conclusion for three reasons.

First, HM3 Whiskey's unsworn statements that he shot HM3 Delta lack sufficient guarantees of trustworthiness because HM3 Whiskey recanted and repudiated those statements both before trial and under oath when testifying at trial. The "recantation or repudiation of the statement after it was made" is an important factor to consider in deciding whether hearsay is too untrustworthy to be admitted under the residual hearsay exception. Paul F. Rothstein, *Federal Rules of Evidence,* Rule 807. Residual Exception (2025 ed.); *see also* 30B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 7063 (2025 ed.) (identifying "whether the witness ever recanted" as a factor to consider). "Evidence that a declarant subsequently recanted the story of course is an argument against its trustworthiness." 5 Clifford S. Fishman & Anne Toomey McKenna, *Jones on Evidence* § 37:15 (7th ed. Supp. 2024). Accordingly, numerous cases have denied admission of recanted or repudiated statements under the residual exception to the rule against hearsay. *See, e.g.*, *United States v. Redlightning*, 624 F.3d 1090, 1118 (9th Cir. 2010) (holding a statement was not sufficiently trustworthy in part because the declarant recanted); *United States v. Groce*, 999 F.2d 1189, 1190-91 (7th Cir. 1993) (same).

To be sure, a recantation by itself does not disprove the truth of an earlier confession. The confession might be true, and the recantation might be false. But the recantation *calls into doubt* the truth of the confession and thus makes the confession untrustworthy. In such situations, if the declarant is available, the confession should not be admitted into evidence under the residual exception to the rule against hearsay for proof of the matter asserted. Rather, the declarant should be called to testify so that the trier of fact can assess the witness's credibility and decide what to believe, which is exactly what occurred here when HM3 Whiskey testified at trial. And if the declarant on the stand contradicts a past out-of-court confession, the past confession may be used for impeachment, which again is precisely

what occurred in this case when trial defense counsel cross-examined HM3 Whiskey.

Second, HM3 Whiskey's statements lack sufficient guarantees of trustworthiness because, before making the statements, HM3 Whiskey repeatedly said that he did not know or could not remember what happened. Specifically, HM3 Whiskey made the following statements:

> "If I shot him, I don't remember."

> "I am scared. If I knew I did it, I would say it because I don't lie."

> "I don't remember . . . . I don't think I shot him."

> "I don't know what happened. I'm not being defensive, I literally do not know what happened . . . . Maybe I just blocked it out . . . . I don't know what happened."

> "If I knew it was me that did it, I would say it was me that did it."

The "personal knowledge of the declarant regarding the subject matter of [a] statement" is also recognized as an important factor in deciding whether hearsay is trustworthy. Rothstein, *supra*, Rule 807. Residual Exception; *see also* Wright & Miller, *supra* § 7063. Here, HM3 Whiskey's denials of memory and knowledge called into doubt the truth of his later statements that he shot HM3 Delta. To be sure, HM3 Whiskey's denials of memory and knowledge may have been false. Again, the proper course in this situation, where out-of-court statements lack sufficient guarantees of trustworthiness, was not to admit the hearsay confession as substantive evidence under the residual hearsay exception but instead to have HM3 Whiskey testify at trial and be cross-examined, which is what occurred. The members then could assess the credibility of HM3 Whiskey's testimony.

Third, HM3 Whiskey's statements also lack sufficient guarantees of trustworthiness because HM3 Whiskey expressly indicated that he was confessing based not on his own knowledge but instead based on the information that the investigators provided to him. After the investigators

told HM3 Whiskey that forensic evidence showed he was the shooter, HM3 Whiskey responded with statements such as:

> "But if like the evidence . . . you can't argue evidence if the evidence and stuff come back and say I did it was an accident."

> "If all the evidence is pointing at me, I know I was the one . . . with the gun around that time, but I still don't know how it got loaded. But I guess, I guess, I did it. There's really no arguing it."

Whether the investigator's statements about the forensic evidence were true or false, the exchange raises the possibility that HM3 Whiskey did not have personal knowledge about what happened and only confessed based on what the investigator told him.

For these reasons, I conclude that HM3 Whiskey's statements lack "sufficient guarantees of trustworthiness" to fit within the residual exception to the rule against hearsay under M.R.E. 807(a). My conclusion might have been different if HM3 Whiskey had made the statements at issue in a different context. But here, HM3 Whiskey was interrogated overnight in two separate sessions for a total of six hours—with only a short interval in between—during which HM3 Whiskey was tired, distraught, and scared. The adverse conditions did not necessarily make his hearsay statements untruthful. Yet M.R.E. 807 does not stand for the proposition that hearsay statements are to be admitted under the residual exception merely because they may be truthful. On the contrary, the rule dictates that hearsay statements are admissible only if they are supported by "sufficient guarantees of trustworthiness" and are "more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts." M.R.E. 807(a)(1)-(2). The manner in which HM3 Whiskey was questioned during the investigatory interrogations did nothing to make his hearsay statements more trustworthy nor were these hearsay statements "more probative" on the issue than HM3 Whiskey's testimony at trial.

## II.

Having concluded that HM3 Whiskey's statements were not admissible under the residual exception in M.R.E. 807, the question remains whether the Sixth Amendment required their admission. I am unpersuaded that it did.

Appellant relies on *Chambers v. Mississippi*, 410 U.S. 284 (1973). In that case, a state trial court barred witnesses in a murder trial from testifying that a third party had confessed to a murder. The Supreme Court held that the exclusion of this evidence violated the right of "an accused to present witnesses in his own defense." *Id.* at 302. Appellant asserts that the same conclusion is required here. *Chambers*, however, is distinguishable from this case for two reasons. First, a key factor in the Supreme Court's conclusion that the hearsay evidence should be admitted was that the statement at issue "bore persuasive assurances of trustworthiness." *Id.* Here, as explained above, Appellant's statement lacked sufficient guarantees of trustworthiness. *See* Wright & Miller, *supra* § 6795 (explaining that there are now few cases decided under the constitutional rule in *Chambers* because the residual hearsay exception to the rule against hearsay now provides for admission of trustworthy evidence). Second, *Chambers* is also distinguishable because the Mississippi procedural rules at issue prevented the defendant from impeaching the third party's recantation of the confession. 410 U.S. at 295-98. The inability of the defense to subject the third-party confessor to the crucible of cross-examination prevented the jury from deciding for itself whether the third party's testimony was worthy of belief. In this case, unlike in *Chambers*, Appellant was able to cross-examine HM3 Whiskey and impeach the credibility of his recantation.

In *United States v. Scheffer*, 523 U.S. 303, 305 (1998), the Supreme Court reversed this Court's decision that a blanket exclusion of polygraph evidence in the Military Rules of Evidence violated due process. In so doing, the Supreme Court explained that this Court had misunderstood the decision in *Chambers*. The Supreme Court stated: "*Chambers* . . . does not stand for the proposition that the defendant is denied a fair opportunity to defend himself

whenever a state or federal rule excludes favorable evidence." *Id.* at 316. The Supreme Court reasoned that the President could exclude polygraph evidence in large part because there was no scientific consensus that it was reliable. *Id.* at 309-10. Similarly here, and unlike in *Chambers*, sufficient guarantees of trustworthiness are absent.

### III.

For these reasons, I conclude that the military judge reached the correct conclusion in excluding the hearsay in this case. I therefore would answer the granted question in the negative and affirm the decision of the NMCCA, which affirmed the findings and the sentence in this case.